Chief Judge Desmond.
We are to' decide whether the infant claimant Christine Williams (the claim of her mother Lorene Williams is not before us now) has alleged a sufficient cause of action against the State of New York. The claim asserts negligence of the State in the care and.custody of the infant’s mother while the latter was a patient at a State hospital for the mentally ill “ and more particularly in failing to provide adequate, sirffi-cient and proper care and supervision over her while she was in the custody of the State and in negligently failing to protect and safeguard her health and physical body from attack and harm from others, which negligence resulted in the infant Christine Williams being conceived, being born and being born out of wedlock to a mentally deficient mother. ’ ’ The theory of suit becomes clearer when we examine the paragraph where the particulars of claimant’s damage are set out thus: as a result of this neglect of the State, the child has been “ deprived of property rights; deprived of a normal childhood and home life; deprived of proper parental care, support and rearing; caused to bear the stigma of illegitimacy ’ ’.
*483 No such, theory of suit has ever before, it seems, been put forward in any court anywhere (the closest being Zepeda v. Zepeda, 41 Ill. App. 2d 240, cert. den. 379 U. S. 945, of which more will be said hereafter). The Court of Claims Judge Avho heard the motion thought that this lack of precedent was not fatal, and that recovery of damages was possible since there had been a wrong by the State with resulting and reasonably to be anticipated harm to the child. The Appellate Division, reversing the Court of Claims and dismissing the claim, rejected the idea that there could be an obligation of the State to a person not yet conceived and, secondly, the Appellate Division held that the “ damages ” are not susceptible of ascertainment, resting as they do “ upon the very fact of conception ”.
That no such claim has ever before been accepted by a court is not in itself an unscalable barrier. As claimant reminds us, our own court has in the last 15 years permitted suits to lie for wrongs which earlier decisions had found not suable — for instance, Woods v. Lancet (303 N. Y. 349); Bing v. Thunig (2 N Y 2d 656); Ferrara v. Galluchio (5 N Y 2d 16); Battalla v. State of New York (10 N Y 2d 237); Greenberg v. Lorenz (9 N Y 2d 195); Goldberg v. Kollsman (12 N Y 2d 432). But in none of these did we declare that to be an actionable wrong which the law had found before to be no wrong at all — in other words, we did not in the instances cited create now causes of action. In each of those cases we decided that an earlier court-created immunity or exemption should no longer be provided. In Woods v. Lancet (supra) we, reversing our own earlier precedents, made it possible for an infant after birth to recover for injuries sustained en ventre. In Bing v. Thunig (supra) we removed an ancient court-devised immunity of charitable hospitals. Battalla v. State of New York (supra) held (and similarly Ferrara v. Galluchio, supra) that a psychic trauma negligently caused is as much a basis for damages as is a physical hurt. The Goldberg and Greenberg (supra) holdings brought into liability the makers as well as the purveyors of damage-causing products. In none of these were we asked to, nor did we, go so far as to invent a brand new ground for suit. To uphold the present claim would be to say that being born out of wedlock in itself gives a right to damages and that the damages include com *484 pensation for the (supposed or possible) disadvantages of illegitimate birth.
Impossibility of entertaining this suit comes not so much from difficulty in measuring the alleged “ damages ” as from the absence from our legal concepts of any such idea asa“ wrong ” to a later-born child caused by permitting a woman to be violated and to bear an out-of-wedlock infant. If the pleaded facts are true, the State was grievously neglectful as to the mother, and as a result the child may have to bear unfair burdens as have many other sons and daughters of shame and sorrow. But the law knows no cure or compensation for it, and the policy and social reasons against providing such compensation are at least as strong as those which might be thought to favor it. Being born under one set of circumstance rather than another or to one pair of parents rather than another is not a suable wrong that is cognizable in court. The farthest reach of our law is to paternity proceedings (see Family Ct. Act) and that was accomplished by statute.
Of interest on this general subject is Zepeda v. Zepeda (41 Ill. App. 2d 240, cert. den. 379 U. S. 945, supra) where an illegitimate child sued his father because the father had by a fraud on the mother caused his birth. The Illinois courts dismissed the suit.
The order should be affirmed, without costs.