Harold Hyman, J.
The complaint herein presents various claims arising out of claimed medical malpractice and/or fraud. The matter presents interesting and controversial contentions in modern day law.
The basic claim pleaded herein is by the legal representatives, mother and father of a child born to said parents. The child survived her birth for approximately two and one-half years; and during such period lived her short life in pain and suffering with and from polycystic kidneys and other diseases. Through the medium of the administrators of her estate, she makes claim in tort against the defendant doctors for conscious pain and suffering sustained by her after birth, contending that as a result of the defendants’ medical malpractice she was conceived and born when she should not have been conceived or born. Such type of claim has in recent years received nomenclature in the field of torts as one for "wrongful life” and/or the "right not to be born”. (Gleitman v Cosgrove, 49 NJ 22; Ann., 22 ALR3d 1441.)
The present claim brings directly to the forefront the highly controversial issue of whether any such asserted claim is legally viable. Does there exist after birth a legal right to make claim for pain and suffering resulting from a tort committed prior to conception and thus having been conceived and born; thus, in retrospect, to choose not only not to have been born but what is more, not to have been conceived?
Of course, on cursory observation it might be said that if a viable cause of action herein exists, it could lead to many and myriad ramifications of actions. On the other hand, on a true analysis and study, it would seem to this court that such would not and could not take place and, therefore, prior decisions may have regrettably held to such insupportable statement in holding such to be a deterrent to the viability of an action of this nature.
This and other issues resultant therefrom herewith present themselves upon defendants’ motion to dismiss "all” of the causes of action alleged in the complaint for failure "to state a cause of action” (CPLR 3211, subd [a], par 7).
/It must be observed that at this point we are not dealing with an action for wrongful death under the Estates, Powers and Trusts Law (art 5, §§ 5-4.1-5-4.5) in considering whether or not the deceased child, through her representatives, has an action for conscious pain and suffering resultant from her wrongful conception and wrongful birth. A wrongful death *224 action does not exist; any contention otherwise was laid to rest by Endresz v Friedberg (24 NY2d 478).
The court is mindful of the admonition that on a motion addressed to the sufficiency of a complaint, the pleading must be: — deemed to allege whatever can be implied from its statements by fair intendment (Kober v Kober, 16 NY2d 191, 193), liberally construed (CPLR 3026), assumed to be true (Denihan Enterprises v O’Dwyer, 302 NY 451, 458), and the cause or causes of action must stand "If in any aspect upon the facts stated the plaintiff is entitled to a recovery” (Kober v Kober, supra, p 193). In this regard consideration must be given to the entire complaint (Dulberg v Mock, 1 NY2d 54, 56; Howard Stores Corp. v Pope, 1 NY2d 110, 114). Since, therefore, this determination must be made on the complaint only, the issue of whether plaintiffs will or will not be ultimately able to establish their allegations by competent evidence is one not pertinent to present consideration (Cohn v Lionel Corp., 21 NY2d 559, 560; Kober v Kober, supra).
Bearing in mind the foregoing, this court will first examine the "sixth” cause of action as alleged in the complaint.
THE SIXTH CAUSE OF ACTION
This cause of action is brought by the natural parents on behalf of and as the legal representatives of the estate of the infant, Lara, also known as Lara E. Park, deceased, hereinafter called "Lara”.
The complaint, supplemented by plaintiffs’ bill of particulars, claims that: — both defendants are licensed doctors, "specialists” in the field of obstetrics; that Mrs. Park, the mother of the infant decedent, Lara, had previous to the birth of Lara given birth to a child in June, 1969; that the prior child was born with polycystic kidneys and other conditions and died a short time after its birth; that defendant, Dr. Chessin, was in charge of that delivery; that after the death of the prior child, defendants rendered medical care and advice to the mother between June, 1969 and July 31, 1970; that based upon such advice the mother became pregnant, resulting in the birth of the presently involved infant, Lara, on July 31, 1970; that the defendant Gibstein supervised and delivered said child; that this child (Lara), plaintiff now deceased, was also born suffering from polycystic kidneys from which she died two and one-half years later; that defendants were guilty of malpractice because of the negligent care, treatment and advice given to *225 the mother which, they maintain, was not in accord with accepted medical standards in that the medical care and advice was improper by failing to inform the mother and father of the deceased infant of the risk of said infant’s being born with such congenital defects inherent in another pregnancy; that defendants represented to the mother that the condition of the prior (1969) deceased child did not indicate any reason for the mother not to become pregnant again and that there was no reason to fear that a future pregnancy would result in the birth of an unhealthy, congenitally defective child; that defendants did not inform them that polycystic kidney disease was hereditary in nature; that defendants failed to take tests to ascertain the chromosomal and/or genetic makeup of the mother and father so as to ascertain the possibilities and probabilities on a rational basis of any birth following that of their male child born in June, 1969 who was afflicted with said congenital kidney disease, and in advising, informing and assuring the mother and father that any child conceived and born to them subsequent to the birth of the child in 1969 would not be similarly afflicted without any test data as a basis for such advice; and by giving the plaintiffs such reassurance without having made any research or investigation into relevant medical information then available concerning said condition and its congenital hereditary nature.
It is also contended that the representations were false in that there was some likelihood that a future pregnancy would again result in a baby being born with polycystic kidneys and that such representation was made to the mother and father of the deceased infant for the purposes of inducing them to have another child; that such representations were made with knowledge of their falsity, with reckless disregard for the truth, with pretense of knowledge, and without ascertaining or inquiring as to the correct facts and circumstances; that Lara was born with polycystic kidneys and other conditions and suffered conscious pain and anguish, necessitating extensive hospitalization, tests and procedures.
Although the above series of allegations, supplemented by the bill of particulars, which constitute the "sixth” cause of action are an admixture of alleged malpractice and fraud, the court has considered them all to be in effect one, that is, the tort (malpractice) action asserted by the infant, now deceased, for pain and suffering resulting from her birth in violation of *226 her claimed "right not to be conceived and therefore not to be born”.
It is to be noted that since the allegations of the sixth cause of action are for the deceased child’s pain and suffering, any recovery thereon would be part of the infant decedent’s estate; as such it would require the appointment of an administrator for said infant’s estate with the pleading herein requiring an allegation of such an appointment. This cause of action brought by the parents of the deceased infant titles them as administrators of the estate; yet, nowhere in this, the sixth cause of action, is there any specific pleading of their appointment by any court of competent jurisdiction. Nevertheless, this court will, for liberalization and expedition, deem such to have been pleaded and to include subsequently pleaded paragraphs 54 and 56 of the eighth cause of action which is likewise brought by the decedent’s parents "as administrators” and wherein such allegation is contained.
Life begins at the moment of conception; from that moment every foetus is a life "in being” and, as such, has the rights of a human person (Zepeda v Zepeda, infra).
In Zepeda v Zepeda (41 Ill App 2d 240, 248-249) the court stated:
"In the last few years a change has taken place in the law pertaining to prenatal physical injuries * * * judges were troubled by the unfairness of holding that a child en ventre sa mere was a human being for inheritance and property rights and not one if it suffered tortious physical injury * * *. Gradually thereafter various jurisdictions permitted actions for prenatal injuries if a child was viable at the time of injury and if it survived birth * * * but generally the viability of the child at the time of injury became the criterion upon which recovery rested. * * * The law has slowly come to realize these uncertainties and the viability test is being abandoned. Now complaints are being sustained where the pleaded facts show that the child was not, or might not have been, viable when the injury occurred” citing cases, including Kelly v Gregory, 282 App Div 542; emphasis supplied. Continuing at pages 249 to 250: "if recovery is to be permitted an infant injured one month after conception, why not if injured one week after, one minute after, or at the moment of conception? It is inevitable that the date will be further retrogressed. * * * If there is human life, proved by subsequent birth, then *227 that human life has the same rights at the time of conception as it has at any time thereafter. * * * But what if the wrongful conduct takes place before conception? Can the defendant be held accountable if his act was completed before the plaintiff was conceived? Yes, for it is possible to incur, as Justice Holmes phrased it in the Dietrich case, 'a conditional prospective liability in tort to one not yet in being. ’ ” (Emphasis supplied.) (See, also, Endresz v Friedberg, 24 NY2d 478, 485-486.) Again continuing: "It makes no difference how much time elapses between a wrongful act and a resulting injury if there is a causal relation between them. ” (Emphasis supplied.)
The injuries resulting from a wrong committed upon or as to complainant before conception need not have been physical. In Piper v Hoard (107 NY 73, 79-80) it was stated:
"It is true, the plaintiff was not born when the fraudulent representations were made. Still they were made by the defendant to the plaintiffs mother for the purpose of inducing a marriage between the parents, and if they had been true the plaintiff would have been the owner of this particular property. In this way she is the very person injured by the fraud, and although not individually in the mind of defendant when he perpetrated that fraud, yet, as filing the position of heir to her father, she belongs to the class which defendant had in contemplation when he represented to the mother that the heir of Frederick would have the farm. In this way it may be claimed that defendant had in view the plaintiff, and the rights he alleged she would have. Why should not the plaintiff be permitted to hold the defendant to his representations?” (Emphasis supplied.)
Since the decedent’s conception took place after the alleged tort committed by defendants, and since the child was a potential being with essential reality at the time of the act, for she belonged to a class which defendants could foresee and had in contemplation when they made the alleged misrepresentation to the mother and committed the alleged tort, defendants had in view the decedent. In this way, according to Piper, it can be claimed there was a "foreseeability”. Why, therefore, under such circumstances should not the plaintiff decedent be permitted to hold these defendants in damages, since the defendants’ wrongful acts are alleged to have caused the procreation of the being whom they intended and ultimately injured (Zepeda v Zepeda, supra, p 253; Piper v Hoard, supra), and particularly so since even "foreseeability” is not a *228 necessary ingredient (Steitz v Gifford, 280 NY 15, 20; Ziemba v Sternberg, 45 AD2d 230, 231).
In Piper the tort (fraud) had merely to do with the right of inheritance, that is, to declare defendant a trustee ex maleficio of land; a tort for which equitable relief was therein sought and obtained. But damages at law for said tort could equally have been sought and obtained therein (Bower v Palmer, 281 NY 341; Leventhal v Liberman, 262 NY 209, affg 237 App Div 808; 37 CJS, Fraud, § 142, n 74). The facts alleged herein indicate a tort committed upon the decedent, if not greater than, at least equal to that in Piper.
In the recent case of Howard v Lecher (53 AD2d 420), the court was dealing with an action brought by a child’s "parents” claiming damages for "their own” mental distress and emotional disturbance allegedly resulting from their daughter’s being afflicted with and eventually dying of Tay-Sachs, a fatal genetic disease.
The claim in that case was against an obstetrician and gynecologist whom plaintiffs contended knew or should have known that since plaintiffs were of an Eastern European background, they were potential carriers of said disease and that tests were available to both determine whether they were carriers and also if the fetus was afflicted with it. Plaintiffs also charged said physician with failing to take genealogical history of them, and failing to properly advise them of such tests which could be taken by them and said fetus. Finally, plaintiffs contended that had they been advised the fetus had Tay-Sachs, they would have terminated the wife’s pregnancy by means of a legal abortion.
On analysis, the court in the above matter was primarily concerned with a "fetus” already in being when the alleged malpractice occurred, and solely as to the parents’ claim for "emotional distress”.
The present complaint, at least as far as the sixth cause of action herein is concerned, is dissimilar to Howard. Here the action is brought by the "child” for the alleged tort occasioned against said child prior to her conception, with said child having been foreseeable and unequivocally contemplated by defendants, and said child’s conscious pain and suffering after birth being medically foreseeable.
At this point we are not dealing or concerned with any parents’ action for mental distress. Therefore, at this juncture and in that light, this court, although one of first impression, *229 is not bound by the decision in Howard as stare decisis upon it. (Matter of Smith, 167 Misc 95, 97; 21 CJS, Courts, § 198, n 14, and cases cited.) Nevertheless, even Howard states (p 423): " the fact is that the injury from which their emotional harm stemmed was suffered by the child. "(Emphasis supplied.)
In Stewart v Long Is. Coll. Hosp. (35 AD2d 531, affd 30 NY2d 695) the same (Howard) court dealt with an action by an infant suing a hospital for its failure to abort her mother and to thus terminate her (infant’s) life, and by the parents for mental pain and anguish. In setting aside the verdict in favor of plaintiff’s parents, the court stated that the cause of action by the parents, like that of the child, was not previously known to the law and, as such, should await legislative sanction and should not be accepted by judicial fiat. Howard repeated such admonition, stating (p 424): "Suits seeking recovery of damages due solely to the existence of life, or 'wrongful life’ rather than no life, have not met favor with the courts.” (See, e.g., Rieck v Medical Protective Co., 64 Wis 2d 514; Williams v State of New York, 18 NY2d 481; Aronoff v Snider, 292 So 2d [Fla] 418; Ann., 22 ALR3d 1441, 1443.) This court considers that such cases are not determinative with regard to the present matter because no court of this State has apparently thus far been confronted with a definitive tort action brought by a "child” after its birth for "conscious pain and suffering” based upon a tort committed upon it prior to its conception. The infant decedent does not seek damages for being born, per se, but rather seeks damages for the pain suffered by her after her birth based upon the tort committed prior to conception. This court believes that there is considerable support for its position that this action is viable within the confines of cases decided by the Court of Appeals of this State.
The Court of Appeals explicitly stated in Endresz v Fried-berg (24 NY2d 478, 483, supra): "The Woods decision [Woods v Lancet, 303 NY 349] as the court recognized in Matter of Logan (3 NY 2d 800, supra), simply brought the common law of this State into accord with the demand of natural justice which requires recognition of the legal right of every human being to begin life unimpaired by physical or mental defects resulting from the negligence of another. ”
And, continuing at page 483, stated the following, which upon analysis together with the determination in Piper v Hoard (supra), constitutes to this court clear support for favorable decision to the child’s action herein, namely: "The *230 considerations of justice which mandate the recovery of damages by an infant, injured in his mother’s womb and born deformed through the wrong of a third party, are absent where the foetus, deprived of life while yet unborn, is never faced with the prospect of impaired mental or physical health. ” Further, at pages 485-486: "Translated into tort law, this means that there is but a 'conditional prospective liability * * * created when an unborn child * * * is injured’ through the wrongful act of the defendant, and such liability attaches only upon fulñllment of the condition that the child be born alive. (Keyes v. Construction Serv., 340 Mass. 633, 636.)” (Emphasis supplied.)
Once having been born alive, particularly where, as here, the child was foreseeable and within the contemplation of the defendants, where defendants are claimed to have been aware of or should have been aware of the danger that said child might or would be born with such defects and malady, said child assuredly comes within the "orbit of the danger” for which defendants could be held liable (Johnson v State of New York, 37 NY2d 378, 383).
In Battalla v State of New York (10 NY2d 237, 240-241) the court stated:
"It is fundamental to our common-law system that one may seek redress for every substantial wrong. 'The best statement of the rule is that a wrong-doer is responsible for the natural and proximate consequences of his misconduct; and what are such consequences must generally be left for the determination of the jury.’ (Ehrgott v. Mayor of City of N. Y, 96 N. Y. 264, 281.) A departure from this axiom was introduced by Mitchell (supra), wherein recovery was denied to plaintiff, a pregnant woman, who, although not physically touched, was negligently caused to abort her child. * * * The court indicated essentially three reasons for dismissing the complaint. * * * Finally, the court reasoned that a recovery would be contrary to public policy because that type of injury could be feigned without detection and it would result in a flood of litigation where damages, must rest on speculation.
"With the possible exception of the last, it seems '[a]ll these objections have been demolished many times, and it is threshing old straw to deal with them.’ (Prosser, Torts [2d ed.], § 37, pp. 176-177.) Moreover, we have stated that the conclusions of the Mitchell case (supra) 'cannot be tested by pure logic’ (Comstock v. Wilson, 257 N.Y. 231, 234 [1931]). Although *231 finding impact and granting recovery, the unanimous court in Comstock rejected all but the public policy arguments of the Mitchell decision.
"We presently feel that even the public policy argument is subject to challenge. Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. fThe argument from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in all cases because in some a ñctitious injury may be urged as a real one. ’ (Green v. Shoemaker & Co., 111 Md. 69, 81.)” (Emphasis supplied.)
The foregoing is especially true in this matter.
Specializing physicians owe a degree of care to their patients greater than the ordinary general practitioner. To absolve them of their tort merely because no legal precedent therefor exists in common law is to stultify legal progress and must not be considered a legal barrier (Williams v State of New York, 18 NY2d 481, 483). The law must ever move forward; it must not be allowed to become a motionless pool stagnated by mere lack of precedent or to fall prey to the antiquated theory of "public policy” specifically laid to rest and rejected by the Court of Appeals in Battalia (supra) but once again raised in Howard v Lecher (supra). That theory (public policy) carried upon the thought of being an "unreasonable burden” placed upon the medical profession, is not based upon any proven base; to the contrary, where "birth” has ensued, "public policy” no longer applies (Endresz v Friedberg, supra, p 486).
Why should the medical profession be deemed to have placed upon it "an unreasonable burden” any more than any other profession where malpractice may be charged? What statute or theory of law grants preferential treatment or immunity to the medical profession? The court is guardian of the rights of all the citizenry, not only of a chosen few. This court believes that the medical profession is not "unreasonably burdened” if held liable in damages for the injuries caused to those who depend upon it for their very lives and who are dependent upon that very profession’s conducting itself within the legal standards set for it. Unlike other professions, the medical profession deals not with money or property, but with the continuance of life and avoidance of death. To use the worn-out, rejected cliche of "public policy” is *232 to single out and grant preferential treatment to the medical profession over all other professions and enterprises where malpractice could result in payment of ensuing resultant damages. This was never truly contemplated by either the general public, the Legislature or the court. This court further believes that contrary to the fear expressed in Howard (supra) as to "fraudulent claims” or a "sensible stopping point”, that the judiciary can intelligently sift the wheat from the chaff and that it has the ability to succinctly deal with any attempted fraudulent scheme or claim and make short shrift thereof.
The so-called argument that the damages are somewhat speculative and difficult to prove should not be the arbitrary basis upon which to bar this action, for in any event such position is beside the point on the issue as to the sufficiency of a pleading. (Battalla v State of New York, supra, p 242; Woods v Lancet, 303 NY 349, 356.) In the ultimate it should be the pragmatic determination of the trier of the facts upon a complete analysis of the evidence presented at trial. (Ferrara v Galluchio, 5 NY2d 16, 22; Bird v St. Paul Fire & Mar. Ins. Co., 224 NY 47, 52-53.)
Likewise, the fact that the pleading here under attack does not fall within the ambit of some prior case does not and should not constitute the basis for or require the dismissal of the complaint (Williams v State of New York, supra; Haight v McEwen, 43 Misc 2d 582, 583-584), for the law should never suffer an injury where damage has ensued to be without a remedy of recovery (Kujek v Goldman, 150 NY 176; Piper v Hoard, 107 NY 73, supra). As stated in Piper (supra, p 76): "But if the most that can be said is that the case is novel and is not brought plainly within the limits of some adjudged case, we think such fact not enough to call for a reversal”. (See, also, Williams v State of New York, 18 NY2d 481, 483.)
The real question is not whether there is any precedent for the action since that itself is not an unscaleable barrier (Williams v State of New York, supra, p 483), but whether the defendant indicted such a wrong upon the plaintiff as resulted in lawful damages. (Kujek v Goldman, 150 NY 176, 178.)
Considering the allegations of the sixth cause of action to be true, as this court must, the defendants committed a tort upon the infant child, although then not conceived, but not only contemplated by her parents but also contemplated and fore *233 seeable by defendants, to the child’s injury measured by her short life of two and one-half years.
This court believes that the infant decedent has a viable cause of action for her conscious pain and suffering measurable as any other tort case seeking damages for such type claim (Kane v New York, New Haven & Hartford R. R. Co., 132 NY 160).
The motion to dismiss the "sixth” cause of action is denied.
[Additional material omitted from publication.]