Fuchsberg, J.
(concurring). I agree with the majority opinion insofar as it dismisses the "wrongful life” causes of action brought on behalf of each of the two infants. However, I would not posit that disposition on a professed inability to calculate the extent and amount of the damages.
My own reason is a more fundamental one. There can be no tort "except in the case of some individual whose interests have suffered” and in cases such as these there is no way of showing that the "interests” of the infants have suffered at all (Prosser, Torts [4th ed], § 30).
My point will become more concrete if we contrast the basis for the parents’ own causes of action here with that of their children. Essentially, the claim of the parents in each case is that, but for the defendants’ dereliction in failing to properly inform the parents of the great risk that their children would be born in hopelessly and permanently deformed states, the parents would have arranged to have the pregnancy terminated in the one case, and, in the other, the child would not *416 have been conceived at all. The direct consequence of the medical malpractice, the parents allege, was to frustrate the intended exercise of the legal right in such circumstances (see Roe v Wade, 410 US 113) to have avoided the special responsibilities and attendant physical, economic or psychic damage thus imposed upon them. As Judge Jasen’s opinion makes clear, a cause of action is thus spelled out.
But the same cannot be said about the two infants’ causes of action. It is undisputed that the defendants neither created nor added to the children’s abnormalities; the claim is simply that, but for their failure to act in accordance with accepted medical standards, the children would not have been born. Who. then can say, as it was essential tó the parents’ causes of action that they say for themselves, that, had it been possible to make the risk known to the children-to-be — in their cellular or fetal state or, let us say, in the mind’s eye of their future parents — that the children too would have preferred that they not be born at all?
To ordinary mortals, the answer to the question obviously is "no one”. Certainly the answer does not lie in the exercise by the children, if their mental conditions permit, of subjective judgments long after their births. Therefore, whatever be the metaphysical or philosophical answer — speculative, perhaps debatable, but hardly resolvable — and however desirable it may be for society to otherwise treat these problems with sensitivity, I am compelled to conclude that the matter is just not justiciable (cf. Williams v State of New York, 18 NY2d 481, 484 [Desmond, Ch. J.]; Stewart v Long Is. Coll. Hosp., 58 Misc 2d 432, 436, mod on other grounds 35 AD2d 531, affd 30 NY2d 695; Gleitman v Cosgrove, 49 NJ 22, 63 [Weintraub, Ch. J., dissenting opn]; Note, 87 Yale LJ 1488, 1500-1502; Comment, 13 Wayne L Rev 750, 756-757).
In my view, it is therefore unnecessary to reach the "uncertainty of damages” rationale on which the majority opinion lays such great stress. For if the right to bring a "wrongful life” action could be conceptualized, it is not to be assumed, given the elasticity with which tort law adapts to the need to fix damages for intangible injuries, that difficulty in their calculation would immunize the tort-feasor from damages (see Note, 55 Minn L Rev 58, 62-67). It is, for instance, a recognized axiom, not peculiar to traditional tort law alone, that where a wrong "itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it *417 would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts” (Story Parchment Co. v Patterson Co., 282 US 555, 563; see, also, Prosser, Torts [4th ed], § 30; Birnbaum & Rheingold, Torts, 28 Syracuse L Rev 525, 564-565).
Now a word regarding the majority’s determination that the causes of action brought for the parents’ damages in their own right are viable save to the extent they seek damages for emotional injury. While I join in that determination too, as to emotional injury I do so on the constraint of the court’s earlier decision in Howard v Lecher (42 NY2d 109). I also note that, in joining Judge Cooke in dissent in Howard, I took the majority’s determination in Howard to be a further step, albeit via the quicksand of an asserted public policy, in the retreat Tobin v Grossman (24 NY2d 609) had signalled for the time from the forward-looking principles reflected by earlier cases such as Ferrara v Galluchio (5 NY2d 16) and Battalia v State of New York (10 NY2d 237).
Finally, I call attention to one other fact. To the extent that plaintiffs Hetty Park and Dolores Becker have suffered ascertainable damages in the form of pain and suffering attendant upon their pregnancies (in Ms. Park’s case for the entire pregnancy and in Ms. Becker’s case for its continuance beyond the point when she claims it would have been terminated), these would appear to be clearly compensable. Thus, if the damages question were before us, these more traditional elements of damages would be distinguishable from those proscribed by Howard, i.e., psychic or emotional harm alleged to have resulted from the birth of the infants in an impaired state.