JEFFREY ALBALA, an Infant, by His Parent, BERNARD AL-BALA et al., Appellants, v CITY OF NEW YORK et al., Respondents.

First Department, January 8, 1981

**APPEARANCES OF COUNSEL**

*J. Irwin Shapiro* of counsel *(Stephen Kruger* with him on the brief; *Morris J. Eisen,* P. C., attorney), for appellants.

*Alexander J. Wulwick* of counsel *(Carolyn E. Demarest* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for respondents.

**OPINION OF THE COURT**

BLOOM, J.

This case presents us with a novel and perplexing issue. We are here called upon to determine whether a tort, committed against the mother of a child yet unconceived, gives rise to a cause of action in favor of the child if, as is here claimed, that tort resulted in injury to the child during the period of gestation.

On December 27, 1971, Ruth Albala, the mother of the infant plaintiff, underwent an abortion at Bellevue Hos-

pital. During the procedure her uterus was perforated. In June, 1973 Ruth commenced an action for malpractice. Her husband, Bernard, sued for loss of consortium.

In or about September, 1975 the infant plaintiff, Jeffrey, was conceived. After what was apparently a normal term pregnancy, Jeffrey was born on June 3, 1976. In June, 1979 approximately three years after his birth and some seven years, six months after commission of the alleged tort upon Ruth, the malpractice suit was settled for $175,000. The settlement occurred during the course of the trial of that action.

It is now contended that as a result of the perforation of Ruth's uterus, Jeffrey was born brain damaged. Accordingly, this action was instituted on September 26, 1978, almost seven years after the commission of the alleged act of malpractice and some two years, three months after the birth of Jeffrey.

The complaint alleges five causes of action. The first two causes are on behalf of Jeffrey and allege the malpractice committed upon Ruth and the negligence of defendants in treating her, with resultant injury to Jeffrey. The third cause, also on behalf of Jeffrey, is bottomed upon the failure of defendants to inform Ruth of the risks and hazards of the treatment accorded her by reason of which the consent given by her to the procedures performed was an uninformed consent, with consequent injury to Jeffrey. The final two causes of action are for loss of the child's services, society and companionship and for expenses incurred and to be incurred, including medical attention. One cause is alleged on behalf of each parent.

Defendants moved for summary judgment. Special Term granted the motion, holding that no such action is cognizable under our law. We affirm.

No case decided in this State deals precisely with the issue here raised. We must, therefore, turn to cases which inform by laying down guidelines. At the outset, we note that if the complaint sets forth a viable cause of action, we need not now concern ourselves with whether there was a timely filing of a notice of claim under section 50-e of the General Municipal Law and section 20 of the New York

City Health and Hospitals Corporation Act (L 1969, ch 1016, § 1, as amd) *(Cohen v Pearl Riv. Union Free School Dist.,* 51 NY2d 256).

Despite the explosive expansion of tort law in the recent past, we think it fair to say that none of the cases which removed a bar to suit, therefore recognized by law, created a new cause of action. "That no such claim has ever before been accepted by a court is not in itself an unscalable barrier. As claimant reminds us, our own court has in the last 15 years permitted suits to lie for wrongs which earlier decisions had found not suable—for instance, *Wood* v. *Lancet* (303 N. Y. 349); *Bing* v. *Thunig* (2 N Y 2d 656); *Ferrara* v. *Galluchio* (5 N Y 2d 16); *Battalla* v. *State of New York* (10 N Y 2d 237); *Greenberg* v. *Lorenz* (9 N Y 2d 195); *Goldberg* v. *Kollsman* (12 N Y 2d 432). But in none of these did we declare that to be an actionable wrong which the law had found before to be no wrong at all—in other words, *we did not in the instances cited create new causes of action. In each of those causes we decided that an earlier court-created immunity or exemption should no longer be provided"* *(Williams v State of New York,* 18 NY2d 481, 483 [emphasis supplied]).

Thus, our courts have recognized causes of action for injuries to a viable child, *in utero,* a cause which, prior thereto, had been held nonactionable *(Woods v Lancet,* 303 NY 349, *supra; Kelly v Gregory,* 282 App Div 542). The concept which granted immunity to hospitals in medical malpractice actions, bottomed on the theory that doctors and nurses, though salaried employees of the hospital, were independent contractors for whose acts the hospital was not liable *(Schloendorff v Society of N. Y. Hosp.,* 211 NY 125) was overruled and liability has been imposed upon the hospital for both medical and administrative acts under the doctrine of *respondeat superior (Bing v Thunig,* 2 NY2d 656, *supra).* The right to damages resulting from tort has been expanded to include psychological injuries, even where no physical contact was involved *(Battalla v State of New York,* 10 NY2d 237, *supra; Ferrara v Galluchio,* 5 NY2d 16, *supra);* subject, however, to the limitation that recovery may not be had for such injuries when the wrong is committed against another *(Tobin v Grossman,* 24 NY2d 609).

The doctrine of privity, theretofore applicable to the implied warranties of merchantability and fitness for use, is no longer recognized *(Greenberg v Lorenz*, 9 NY2d 195, *supra; Randy Knitwear v American Cyanamid Co.*, 11 NY2d 5; cf. *Goldberg v Kollsman Instrument Corp.*, 12 NY2d 432, *supra). Millington v Southeastern Elevator Co.* (22 NY2d 498), did no more than eliminate the gender basis for denial to a wife of an action for loss of consortium, a right long possessed by a husband.

More recently, the Court of Appeals refused to recognize a cause of action on behalf of a child born with polycystic kidney disease who was conceived following medical advice, allegedly incorrect, given to the parents of the child that danger of the disease reoccurring was "practically nil" *(Park v Chessin*, 46 NY2d 401, 407). That case, although denominated a "wrongful life" case, bears marked resemblance to the case at bar. There, Hetty Park gave birth to a baby afflicted with polycystic kidney disease. The child died five hours after birth. Thereafter, the Parks consulted with the obstetrician who had treated Mrs. Park during her first pregnancy to determine the likelihood of reoccurrence in a subsequent child. They were advised that the disease was not hereditary and the probability of conceiving a second child afflicted with the disease was substantially nonexistent. Based upon this information, the Parks exercised a conscious choice to seek conception of a second child. Subsequently, Hetty Park gave birth to a second baby. That child was also born with polycystic kidney disease and died within two and one-half years after her birth. The court held that although the law permitted assertion of a cause of action by the parents in their own right limited to a recovery of their pecuniary loss, no cause of action would lie on behalf of the deceased infant. While both the plurality and concurring opinions in *Park* discuss the issue of "wrongful life" in ethical and moral terms, the basic teaching of that case, like the basic teaching of *Tobin (supra)*, reduces itself to the principle that a wrong committed against one which results in damage to another *is not actionable by the other*.

As our brother CARRO has noted in his dissent, there are three cases, all in other jurisdictions, which hold that action

will lie in favor of an infant for damages flowing from a tort committed upon the mother prior to conception *(Renslow v Mennonite Hosp.*, 67 Ill 2d 348; *Bergstreser v Mitchell*, 577 F2d 22; *Jorgensen v Meade Johnson Labs.*, 483 F2d 237). Two of these cases—*Bergstreser* and *Jorgensen* —were bottomed upon the speculation that the States involved—Missouri and Oklahoma—if and when called upon to decide the issue, would hold that such a right of action exists. The third case—*Renslow*—was decided by a sharply divided court. It is most interesting to note that both the *Renslow* and *Bergstreser* courts, in concluding as they did, relied, in part at least, on the Special Term holding in *Park v Chessin* (88 Misc 2d 222), a holding expressly repudiated by our Court of Appeals *(Park v Chessin*, 46 NY2d 401, *supra)*.

In these circumstances we are constrained to conclude, unless otherwise instructed by superior judicial authority or by the Legislature, that no cause of action lies on behalf of Jeffrey.

As to the fourth and fifth causes of action set forth on behalf of Ruth and Bernard, they were necessarily a part of the malpractice action which was settled in June, 1979 during trial. Although clothed in a new theory and seeking augmented damages, all of the matters alleged in these two causes of action flowed from and were part of the wrong committed against Ruth in 1971. They were encompassed in the settlement reached and may not now be the subject of separate action.

Accordingly, the order of the Supreme Court, New York County (HUGHES, J.), entered April 8, 1980, granting summary judgment to defendants is affirmed without costs.

CARRO, J. (dissenting). Should New York permit a cause of action for "preconception tort"?

On December 27, 1971, an abortion was performed on the mother of the infant plaintiff, during the course of which her uterus was perforated.[1] She brought a malpractice action in June, 1973 against the city and the Health

---

1. For our purposes, the truth of the allegations of the complaint is accepted.

and Hospitals Corporation, which was settled in 1979. In the interim she conceived again, and on June 3, 1976, the infant plaintiff Jeffrey Albala was born. The present action was commenced in September, 1978 for brain damage directly caused by the negligent injury to his mother's uterus, prior to his conception.

Defendants moved for summary judgment, which Special Term granted "on the ground that the complaint fails to state a valid cause of action. There is no legal authority for holding defendant liable to the infant plaintiff based on injuries sustained by his mother several years before his conception".

While this appears to be a case of first impression in this State,[2] it has been widely recognized, here as well as elsewhere, that a cause of action exists for "prenatal" injuries, that is, injuries tortiously inflicted after conception but before birth. (See *Woods v Lancet*, 303 NY 349; *Kelly v Gregory*, 282 App Div 542). In recent years in those few jurisdictions in which there have been reported cases requesting relief for tortious injury to an infant caused by a preconception tortious injury to the mother, the cause of action has almost invariably been sustained.

In *Jorgensen v Meade Johnson Labs.* (483 F2d 237), the mother had taken the defendant's oral birth control pills, had then ceased taking them and become pregnant. She thereupon gave birth to mongoloid twins, because the pills altered the chromosome structure within her body. Reversing the District Court and holding that the complaint stated a cause of action, the United States Court of Appeals for the Tenth Circuit, in interpreting Oklahoma law, held that the District Court had erred in reasoning that there could be no right of the child arising out of the preconception

---

2. While the companion cases of *Becker v Schwartz* and *Park v Chessin* (46 NY2d 401, 408) dealt with allegations of preconception tort, those allegations involved "wrongful life", i.e., "the validity of a cause of action seeking compensation for the wrongful causation of life". It was not contended that the defendant physicians' treatment of the respective mothers cause the abnormalities in their infants, but that they would not voluntarily have conceived *(Park)* or would have terminated the pregnancy *(Becker)* had they received accurate medical advice. The Court of Appeals did not reach the preconception issue which confronts us here but based its holding, that such a cause of action for "wrongful life" does not exist, on other grounds.

injury to the mother until legislative recognition was given to such a right. The court observed (p 240): "If the view prevailed that tortious conduct occurring prior to conception is not actionable in behalf of an infant ultimately injured by the wrong, then an infant suffering personal injury from a defective food product, manufactured before his conception, would be without remedy * * * We are persuaded that the Oklahoma courts would treat the problem of the injuries alleged here as one of causation and proximate cause, to be determined by competent medical proof."

*Renslow v Mennonite Hosp.* (67 Ill 2d 348), was an action for injuries sustained by an infant as a result of the negligent transfusion of RH-negative blood into its mother, who had RH-positive blood, several years prior to the infant's conception, when the mother was 13 years of age. In upholding the cause of action and extending the recognized liability for negligently inflicted prenatal harm, the court stated (p 357): "The cases allowing relief to an infant for injuries incurred in its previable state make it clear that a defendant may be held liable to a person whose existence was not apparent at the time of his act. We therefore find it illogical to bar relief for an act done prior to conception where the defendant would be liable for this same conduct had the child, unbeknownst to him, been conceived prior to his act. We believe that there is a right to be born free from prenatal injuries forseeably caused by a breach of duty to the child's mother. Conduct which puts harmful consequences in motion and injury to a forseeable class of persons as a direct result may be negligence for which responsibility may attach. That there may be a time gap between the wrongful act and the suffering is immaterial. The cause of action is uniformly created not at the time of the negligent act, but only when the injury has been sustained." (Concurring opn, p 365.)

The case in this area which most closely resembles our own is *Bergstreser v Mitchell* (448 F Supp 10), where the parents brought an action on behalf of both themselves and their infant son, for injuries arising out of defendant's negligent performance of a caesarean section, over two and one-half years before the child's birth. This caused the

mother's uterus to rupture during pregnancy, necessitating an emergency caesarean section, which resulted in brain damage. While barring the parents' claims on Statute of Limitations grounds, the court ruled that the complaint alleged a cause of action on behalf of the infant for personal injuries arising from preconception negligent conduct.

While this is not as "pure" a case of negligence and direct causation as is our own, since there was another intervening caesarean, the court's ruling is also persuasive because the status of Missouri law in 1977, with regard to this question, was similar to our own and the now predominant view. Missouri had expanded the right for prenatal injuries to allow an infant to bring an action for injuries received after conception, contingent upon being born alive. The court felt (p 14) that the problem presented was one of "causation and proximate causation" to be determined by competent medical proof. It stated that there had been no showing that the defendant could not reasonably have foreseen that plaintiff mother, a married woman, would later bear a child and that the child would be injured as the result of the earlier improper caesarean section. "The duties imposed by the law of torts arise out of circumstances wherein there is a foreseeable or reasonable anticipation that harm or injury is a likely result of acts or omissions to act * * * The principles of common law authorize courts to compel a tortfeasor to compensate a person who has been injured through the tortfeasor's negligence. If a child after birth has no right of action for injuries arising out of preconception negligent conduct, there is a wrong inflicted for which there is no remedy. The Court finds no logical reason to deny recovery to a person simply because he had not yet been conceived when the wrongful action took place." *(Bergstreser v Mitchell, supra,* p 14.)

The action now before us is the strongest, clearest case for the extension of the prenatal injury doctrine to preconception injury. It is simpler and more direct than any of the cases in which a right of recovery has thus far been upheld. The defendants violated their duty of care to plaintiff's mother and negligently punctured her uterus. It was foreseeable that she, a young married woman, would again

conceive. She did, and plaintiff was born brain damaged as a result. To afford relief is consistent with common-law principles. Given the present state of medical and scientific knowledge, it becomes illogical to deny relief based upon the status having been "prenatal", "viable" or "preconception". Shall we grant recovery for a tortious act committed one moment after conception and yet deny it for the same act committed one moment before conception?

"The case at bar seems to be the natural result of the present course of the law permitting actions for physical injury ever closer to the moment of conception. In point of time it goes just a little further. The significance of this course to us is this: if recovery is to be permitted an infant injured one month after conception, why not if injured one week after, one minute after, or at the moment of conception? It is inevitable that the date will be further retrogressed * * *

"But what if the wrongful conduct takes place before conception? Can the defendant be held accountable if his act was completed before the plaintiff was conceived? Yes, for it is possible to incur, as Justice Holmes phrased it in the Dietrich case [*Dietrich v Inhabitants of Northampton*, 138 Mass 14] 'a conditional prospective liability in tort to one not yet in being.' It makes no difference how much time elapses between a wrongful act and a resulting injury if there is a causal relation between them. Let us take the hypothetical case of an infant injured after birth by a defective household device * * * Would there be a right of action against the manufacturer despite the fact the negligence took place before the child was conceived?" (*Zepeda v Zepeda*, 41 Ill App 2d 240, 249-250).

Suppose an infant suffered injury from defective baby food or infant formula, negligently manufactured before its conception? Or from the negligent puncturing of its mother's uterus? We must consider what makes sense and is just, so long as it is not in conflict with sound legal principles.

There is no New York decision in which a claim such as this has been enforced; however, "The absence of precedent should give no immunity to one who by his wrongful act

has invaded the right of an individual. No right is more inherent, more sacrosanct, than that of an individual in his possession and enjoyment of life, his limbs and his body. The law is not static and inert, but is sufficiently elastic to meet changing conditions. It is presumed to keep pace with present-day concepts." *(Woods v Lancet*, 278 App Div 913, 914 [dissenting opn], revd 303 NY 349.)

The Court of Appeals may wish to examine this question in view of the trend in the decisions and commentaries, as well as the injustice evident in the denial of the opportunity to such children to prove their cases.

Defendants' arguments regarding the Statutes of Limitation do not foreclose the infant plaintiff. The order granting summary judgment on the ground that the complaint fails to state a cause of action should be reversed as to him.

KUPFERMAN, J. P., BIRNS and ROSS, JJ., concur with BLOOM, J.; CARRO, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on April 8, 1980, affirmed, without costs and without disbursements.