Wachtler, J.
The issue presented is whether the parents can recover from the defendant doctor for the mental distress and emotional disturbances they suffered as a result of their infant daughter having been born with and eventually succumbing to Tay-Sachs disease, a progressive degenerative genetic disorder affecting the nervous system. In their complaint the parents allege that the doctor was negligent in that he failed to take a proper genealogical history or to properly evaluate it. They claim that he was aware that they both were Eastern European Jews and he, therefore, should have known of the high risk that the fetus would suffer from the disease. They contend further that had he made them aware of the risk involved and informed them of the availability of tests to determine the existence of the disease, they would have undergone the tests, and, had they been advised the fetus was afflicted with Tay-Sachs, they would have aborted the pregnancy.
The defendant moved to dismiss the plaintiffs’ claim for failure to state a cause of action (CPLR 3211, subd [a], par 7). Special Term denied the motion. A divided Appellate Division reversed. v
The case is a difficult one to decide. On the one hand the *111 parents claim they have suffered more from watching their child die from natural causes than they would have had they been offered the opportunity to voluntarily terminate the pregnancy through abortion. On the other hand they concede that the doctor was not responsible for the child’s affliction with Tay-Sachs or the inevitable death. The question before us is whether the doctor should be held liable for the trauma suffered by the parents allegedly caused by the birth, degeneration and death of the child. Since we are of the opinion that to afford the parents relief as against the doctor would require the extension of traditional tort concepts beyond manageable bounds, we are in agreement with the determination below that the complaint fails to state a cause of action.
In order to provide a party who has been injured through the negligence of another with some measure of redress for the wrong inflicted upon him, a rule of law has evolved allowing that party to recover money damages as compensation for the injuries sustained (cf. Steitz v Gifford, 280 NY 15, 20). This, of course, is based on the legal fiction that money damages can compensate for a victim’s injury. Although this device is as close as the law can come in its effort to right the wrong, it is still, nevertheless, a fiction for money will not replace or repair the lost or broken limb or remove the disability caused (see Sanders v Rolnick, 188 Misc 627, affd 272 App Div 803).
By the same token, however, the law has long recognized that it need not provide relief for every injury suffered. Where a party’s negligence is directly responsible for physical injury to another, there is no question but that the injured party may recover both for the actual physical injury sustained and for the concomitant mental and emotional suffering which flow as a natural consequence of the wrongful act (see Steitz v Gifford, 208 NY 15, supra). Indeed, an individual can recover for the psychic injuries suffered as a result of another’s negligence where there has been no physical impact if the party seeking recovery was subjected to the fear of physical injury as a direct result of the tortious conduct (Battalla v State of New York, 10 NY2d 237). Further, we have held that there may be recovery for the emotional harm, even in the absence of fear of potential physical injury, to one subjected directly to the negligence of another as long as the psychic injury was genuine, substantial, and proximately caused by *112 the defendant’s conduct (Johnson v State of New York, 37 NY2d 378, 383-384).
On the other hand, the law has repeatedly denied recovery for mental and emotional injuries suffered by a third party as a result of physical injuries sustained by another (Tobin v Grossman, 24 NY2d 609, and cases cited therein; Shaner v Greece Cent. School Dist. No. 1, 51 AD2d 662; Bessette v St. Peter’s Hosp., 51 AD2d 286; Roher v State of New York, 279 App Div 1116). No cause of action exists, irrespective of the relationship between the parties or whether one was a witness to the event giving rise to the direct injury of another, for the unintentional infliction of harm to a person solely by reason of that person’s mental and emotional reaction to a direct injury suffered by another. Thus, in Tobin v Grossman (supra), we denied recovery to a mother traumatized by the injuries suffered by her child as the result of the negligent operation of an automobile by another. Our court there recognized, as we now do, that the plaintiff parent suffered as genuinely as if she herself were the object of the injury which resulted from the impact suffered by the child. However, we also recognized then, as now, that the law must establish, circumscribe and limit the rules ascribing liability in a manner which accords with reason and practicality.
In the case now before us, we assume, as we must in connection with this motion to dismiss (Cohn v Lionel Corp., 21 NY2d 559, 562), that the doctor was negligent in failing to take the proper measures to determine whether the fetus suffered from Tay-Sachs and that as a result of that negligence the parents permitted the pregnancy to run its course and the child to be born instead of seeking an abortion. Whether or not a cause of action would lie on behalf of the injured child has not yet been addressed by our court (cf. Johnson v Yeshiva Univ., 42 NY2d 818), nor is it the question now before us.
We are here concerned with a suit brought by the parents for their mental and emotional pain and suffering resulting from witnessing their child suffer from this horrid disease. It cannot be denied that they themselves were made to bear no physical or mental injury, other than the anguish of observing their child suffer, as a result of the defendant’s presumed negligence, nor did that negligence directly cause the child to fall victim to the disease. Analogous, indeed stronger since the injuries would directly result from the tortious conduct of the *113 doctor, would be a case in which the doctor, in delivering the infant from the mother’s womb, committed an act of negligence causing frightful injuries to the child, but in no manner physically injuring the parent. Were that parent to suffer psychic injury as a result of the doctor’s misfeasance, it is clear that there could be no recovery (Tobin v Grossman, supra). Nor can the parents recover in the present case.
Sound policy reasons and unlimited hypothesis present themselves. To now extend the perimeter of liability would inevitably lead to the drawing of artificial and arbitrary boundaries. Indeed, the dissenting opinion illustrates the arbitrary nature of such a holding, for it would allow the mother of the deformed child to recover while the father is entitled to no relief. Yet, both parents contend that the injury to them stemmed from the trauma occasioned by viewing the degeneration of their daughter. Can it be said that the mother’s injury was more direct or of a greater magnitude? The law of liability should not turn on hypertechnical and fortuitous considerations of this type.
There can be no doubt that the plaintiffs have suffered and the temptation is great to offer them some form of relief. Ideally, there should be a remedy for every wrong. This is not the function of the law, however, for "[e]very injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree” (Tobin v Grossman, 24 NY2d 609, 619, supra).
Accordingly, the order of the Appellate Division should be affirmed.