MARTHA VACCARO, an Infant, by Her Father and Natural Guardian, JUAN VACCARO, et al., Respondents, v SQUIBB CORPORATION et al., Appellants, et al., Defendant.

First Department, December 6, 1979

APPEARANCES OF COUNSEL

*Joseph M. Costello* of counsel *(Michael Weinberger* with him on the brief; *Costello & Shea,* attorneys), for Squibb Corporation and another, appellants.

*Norman Bard* of counsel *(Sandra Krevitsky* with him on the briefs; *Anthony L. Schiavetti,* attorney), for Emil E. Maffucci, appellant.

*Leonard L. Finz* of counsel *(William D. Fireman* with him on the brief; *Lulien, Schlesinger & Finz, P. C.,* attorneys), for respondents.

**OPINION OF THE COURT**

FEIN, J.

In these consolidated medical malpractice actions, defendants Squibb Corporation, E. R. Squibb & Sons, Inc. and Dr.

Emil E. Maffucci appeal from an order denying their motion and cross motion to dismiss the first nine causes of action of the complaint in Action No. 2 for failure to state a cause of action as a matter of law.

Plaintiff mother Inez Vaccaro, who previously had given birth to a stillborn child and had miscarried once, became pregnant again. During the course of her pregnancy, she received from Dr. Maffucci, first weekly, then monthly, injections of Delalutin, a progestational hormone manufactured, sold and distributed by Squibb and intended to prevent miscarriage. The injections continued until the infant's birth. The child was born on January 10, 1974 without arms or legs and with other severe birth defects.

Action No. 1 commenced by the plaintiff father Juan Vaccaro on behalf of the infant daughter Martha and himself, seeks damages for her injuries and for loss of her services. Action No. 2, later commenced by the mother and father, seeks recovery for "emotional damage", "mental anguish" and other psychic injuries allegedly sustained by reason of the birth of their deformed child.

The first cause of action against Squibb for negligence alleges that as a result of the ingestion of the drug by the mother during her pregnancy, the child was born without limbs, causing the mother to sustain "severe and permanent personal injuries and fear for her own well-being and health including injury to her nervous system, emotional damage, personality changes * * * extreme mental anguish." The second cause of action against Squibb alleges that the child's birth caused the father "severe and permanent injuries, including injuries to his nervous system, emotional damage, personality changes, extreme mental anguish, loss of salary due to his inability to perform his vocation and duties * * * extensive medical expenses for his daughter * * * his wife * * * and himself."

In causes three through five both plaintiffs allege against Squibb and the doctor, breach of warranties of merchantable quality and fitness for use; violation of statutes; and liability under the doctrine of strict liability.

In causes six and eight the wife alleges negligent medical care by the physician and hospital and loss of her husband's services.

In causes seven and nine the husband makes similar allegations.

The issue is whether New York recognizes a parent's cause of action for mental and emotional damage, purely psychic injuries sustained upon the birth of a deformed child, whose deformity was the result of the ingestion of a drug prescribed and administered by the doctor.

In *Howard v Lecher* (42 NY2d 109) relied upon by the dissent, recovery was denied to the parents of an infant daughter who was born with and eventually succumbed to Tay-Sachs disease, a progressively degenerative genetic disorder affecting the nervous system which primarily affects Eastern European Jews and their progeny. The plaintiffs claimed that the doctor was negligent in failing to take a proper genealogical history and in failing to inform them that the fetus might suffer from the disease since both parents were Eastern European Jews, a fact known to the doctor. They claimed that had they known of the risk involved and of the available tests to determine the existence of the disease, the pregnancy would have been aborted. No such claim is made here. The Court of Appeals held that to afford the parents relief against the doctor would require the extension of traditional tort concepts beyond manageable bounds.

Writing for the four-man majority, Judge WACHTLER relied heavily upon *Tobin v Grossman* (24 NY2d 609) denying recovery to a mother who did not witness the accident but who allegedly sustained mental and physical injuries when she found her seriously injured two-year-old child lying on the ground immediately after the mother heard the screech of automobile brakes. The *Tobin* court considered whether the concept of duty in tort should be extended to third persons who sustained no physical impact in an accident nor fear for their own safety, but who asserted liability for mental trauma against those responsible for the accident. The court said that it was being called upon to create a new duty and an entirely new cause of action although it acknowledged that recoverability for mental trauma without physical impact was well settled since *Battalla v State of New York* (10 NY2d 237). In that case the infant had been negligently strapped into a ski lift and allegedly "became frightened and hysterical upon the descent, with consequential injuries." (10 NY2d, at p 239.) The *Battalla* complaint was sustained although it alleged mental and emotional injuries, without impact. The fact that the injuries were consequent upon fright, not impact, did not bar recovery.

In *Tobin* the court suggested that the tests to· be used in determining whether a new cause of action should be recognized are (1) foreseeability of the injury; (2) proliferation of claims; (3) fraudulent claims; (4) inconsistency of the zone of danger rule; (5) unlimited liability; (6) unduly burdensome liability and (7) the difficulty of circumscribing the area of liability. The court denied liability on the ground that the ramifications were such that the limit of liability: "will not stay defined or limited. There are too many factors and each too relative to permit creation of only a limited scope of liability or duty." *(Tobin, supra,* p 619.)

However, some time later, in *Johnson v State of New York* (37 NY2d 378) the court unanimously held that a daughter might recover for emotional harm sustained by her when she was negligently misinformed by defendant hospital that her mother, a patient, had died. Plaintiff only discovered the error after viewing the body at a wake. The test of liability was stated as follows ·(p 380): "Key to liability, of course, is the hospital's duty, borne or assumed; to advise the proper next of kin of the death of a patient."

The court distinguished *Tobin v Grossman (supra),* ruling that the hospital breached its duty to the daughter when it negligently sent the false message. The false message and ·the events flowing from its receipt were the proximate cause of plaintiff's emotional harm.

██ ██ It would appear that our case is more nearly akin to *Johnson* than it is to *Tobin* or to *Howard.* In our case a duty was owed to the mother, as it was to the daughter in *Johnson.* The doctor was the mother's gynecologist. He was apprised of her prior stillborn child and miscarriage. He selected and administered the drug manufactured, sold and distributed by Squibb, now said to be responsible for the birth of the deformed child. The mother was not a mere bystander as in *Tobin.* She ingested the drug prescribed and administered to her by the doctor. The duty of Squibb to the mother is manifest. It manufactured, sold and distributed the drug designed to prevent miscarriage. Here, there was something more than the failure to disclose the danger of bearing a child with the Tay-Sachs syndrome to the putative parents of such a child, as in *Howard.* In *Howard,* there were no affirmative acts, no errors of commission, no affirmative treatment. Moreover, *Howard* was premised upon the contention that had the parents known of the risks involved, there would have been

an abortion, a matter of some speculation, at best. No such issue is here involved.

As an intermediate appellate court required to follow applicable doctrine announced by the Court of Appeals, we may not rely upon the dissent in *Howard* which suggested that the mother was entitled to adequate advice so that she could exercise her legal right to abort the pregnancy. She was entitled to be advised of current learning concerning carriers of Tay-Sachs and the instances of its occurrence in unborn offspring. The distinctions between our case and *Howard* have been noted. However, we observe that the dissenters in *Howard* concluded that the rule of the *Johnson* case was more nearly applicable.

Justice SULLIVAN, in his careful dissent, indicates that the *Johnson* doctrine provides a foundation for liability here, although he concludes we are foreclosed by the majority determination in *Howard.* The dictum in *Howard,* upon which Justice SULLIVAN relies, posits a case in which a doctor, in delivering an infant from the mother's womb, commits an act of negligence causing frightful injuries to the child but in no manner injuring the mother, and concludes that there would be no liability to the mother for psychic injuries.

Even assuming the controlling effect of that dictum in a case on all fours with the suppositious case, it would still not be dispositive here. The duty breached there would be a duty owed to the child on whom the injury was inflicted. In our case the duty to the mother was breached when the doctor administered the drugs to her. The error was one of commission. The injury was sustained as a consequence of the violation of a duty to the mother. The mother was something more than a mere vehicle or a bystander.

If it can be established that the deformities were a direct result of the physician's administration of the drug the mother should be entitled to establish such mental and emotional damage as she sustained by reason of the breach of the duty owed directly to her by the doctor and the drug manufacturer and distributor, in addition to the duty owed to the child.

It is clear that the doctor had a duty of care both to the mother and the child. Squibb plainly had a duty to the mother. We are here concerned only with the duty to the mother and whether the breach of such duty caused her to sustain the injuries complained of. The breach of duty here, at

least to the mother, was one of commission rather than omission. It was she who was injected with the drug, which was prescribed and administered to her to prevent a miscarriage. It allegedly caused the birth of the malformed child. The standards for liability prescribed in *Battalla (supra)* and *Johnson (supra)* provide the foundation for liability here. The breaches of duty in both were in errors of commission. Although the distinction between errors of commission and errors of omission may be a fine one, we need not tarry over it here. We deal here with errors of commission.

In *Howard (supra)* there was a failure to give advice, as in the more recent cases of *Becker v Schwartz* and *Park v Chessin* (46 NY2d 401). In *Howard* and *Becker,* it was alleged that had the proper advice been given there would have been abortions. In *Park,* it was alleged that had the proper advice been given there would have been no conception. Aside from the fact that the errors alleged were errors of omission, in each case speculation would have been required as to the course of action the parents would have taken. Would there have been abortions in *Howard* and *Becker?* Would there have been efforts to prevent conception in *Park?*

The dangers adverted to in *Tobin* militate against permitting recovery in such cases. Here, the mother's complaint states good causes of action when measured against the factors outlined in *Tobin* (24 NY2d 609, 613, *supra*) to be considered in determining whether a new cause of action should be recognized. The first factor, foreseeability, presents no insuperable problem. Was the risk of the birth of a deformed child and the consequent emotional impact on the mother foreseeable? If it could reasonably be foreseen that the drug might cause the birth of a deformed child, it surely was equally to be foreseen that as a consequence the mother would sustain psychic injuries. The consequences were within the "orbit of the danger", and therefore within "the orbit of the duty", for breach of which liability ensues *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 343; *Johnson v State of New York,* 37 NY2d 378, 383, *supra).* "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension" *(Palsgraf, supra,* p 344). The mother plainly was within the range of apprehension. Permitting her to recover will import no proliferation of claims, the second factor described in *Tobin (supra).* Experience, as well as logic, to adapt Holmes' com-

mentary, surely teaches that there is a difference which the law can and should recognize between the mother, who ingested the drug and gave birth to the child, and any other person, whatever his or her relationship to the child. The duty owed by the doctor and the drug company was to the mother who ingested the drug and gave birth to the child. Nor is there any danger of fraudulent claims in this context thus overcoming the third *Tobin* test.

The fourth factor considered in *Tobin* is the zone of danger rule, considered there to mean whether the parent was at the time of the accident in the zone of danger, a geographical test not here applicable. The dissent in *Howard* suggests that in circumstances such as these "there are two within the zone of danger, and the doctor owes a duty to each." *(Howard v Lecher,* 42 NY2d 109, 116-117, *supra.)* There is no need to expand the zone of danger to include those to whom no duty is owed. The drug company and the doctor owed a duty to the mother breached by the injection of the prescribed drug. This is a sufficient foundation for liability. These considerations are dispositive of the three remaining factors suggested in *Tobin,* unlimited liability, unduly burdensome liability and the difficulty in circumscribing the area of liability. Restricting liability to the mother will hold a strict rein on liability and provide a reasonably objective test *(Tobin v Grossman,* 24 NY2d 609, 618, *supra).*

There is no danger that a larger class might become involved, and thus create an area of limitless liability. So far as the measure of damages is concerned, juries have for a long time been asked to determine damages flowing from physical pain, emotional upset, mental trauma and the like where the cause is a physical impact and even where there is no physical impact *(Battalla v State of New York,* 10 NY2d 237, *supra; Ferrara v Galluchio,* 5 NY2d 16). Admeasurement of damages is no more difficult under the circumstances of this case. If the facts alleged are proved there is no danger of a fraudulent claim. The imagined difficulty of circumscribing either damages or liability is overcome if the wife's causes of action are sustained because the duty was owed to her, the drug was administered to her, and she carried and gave birth to the child. There is a vital interest to be protected, there is proximate cause, there is demonstrable injury and there is foreseeability. "Thus, the rationale underlying the *Tobin* case, namely, the real dangers of extending recovery for harm to

others than those directly involved, is inapplicable to the instant case." *(Johnson v State of New York,* 37 NY2d 378, 383, *supra.)*

■ Undoubtedly the father is suffering mental disturbance and emotional distress similar to that of his wife. However, he was not a patient of the doctor and he did not ingest the drug. His suffering is not actionable because he was owed no duty, albeit he properly states a cause of action for loss of consortium, in the ninth cause of action.

Accordingly, the order apealed from should be modified to the extent only of granting the motion to dismiss the second cause of action against Squibb on behalf of the father, the seventh cause of action against the doctor and the hospital on behalf of the father, and so much of the third, fourth and fifth causes of action as are pleaded on behalf of the father against Squibb and Dr. Maffucci, on the law, and otherwise affirmed, without costs.

SULLIVAN, J. (dissenting). Although the majority opinion represents a thorough and articulate analysis of the issues confronting us and of the guiding principles, I believe that we are bound by the decision in *Howard v Lecher* (42 NY2d 109). Accordingly, I would reverse and dismiss the first nine causes of action in complaint number two, which, in essence, seek to recover for the parents' mental anguish incidental to the birth of a deformed child. In *Howard* (p 113), majority opinion dictum that a parent could not recover for psychic injury resulting from "a case in which the doctor, in delivering the infant from the mother's womb, committed an act of negligence causing frightful injuries to the child, but in no manner physically injuring the parent", seems to present a situation so similar to the instant case as to be virtually indistinguishable. Were we not, in my view, foreclosed by *Howard,* I would affirm, at least as to the mother, on the ground that the defendants owed her a duty which was breached in the administration of a dangerous drug purportedly designed to prevent a miscarriage. (See *Johnson v State of New York,* 37 NY2d 378.)

KUPFERMAN, J. P., and LANE, J., concur with FEIN, J.; SANDLER, J., concurs in result only; SULLIVAN, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on November 13, 1978, modified, on the law, to the extent only of

granting the motion to dismiss the second cause of action against Squibb on behalf of the father, the seventh cause of action against the doctor and the hospital on behalf of the father, and so much of the third, fourth and fifth causes of action as are pleaded on behalf of the father against Squibb and Dr. Maffucci, and otherwise affirmed, without costs and without disbursements.