DONALD AQUILIO, as Administrator of the Estate of JASON AQUILIO, Deceased, and as Parent and Natural Guardian of JASON AQUILIO, an Infant, et al., Appellants, v IRVING NELSON et al., Respondents.

Fourth Department, December 23, 1980

#### APPEARANCES OF COUNSEL

*Birnbaum & Manaker, P. C. (Ralph Manaker* of counsel), for appellants.

*Martin, Ganotis & Brown, P. C. (George F. Mould* of counsel), for respondents.

#### OPINION OF THE COURT

CARDAMONE, J.

The sole question is whether damages are recoverable for emotional and mental harm suffered by the plaintiff mother as a result of the death of her infant the day following its birth, allegedly caused by the malpractice of the defendants,

an attending gynecologist and a pediatrician. This question must be answered in the negative.

This action for medical malpractice, negligence, breach of contract and fraud arose out of the care and treatment of plaintiff Daria Aquilio by defendants Irving Nelson and James Howard during the course of her pregnancy. The alleged cause of death was thrombocytopenia and/or respiratory distress syndrome or hylem membrane disease as a result of prematurity.

The complaint alleges that the plaintiff Daria Aquilio was treated by the two defendant doctors and in 1976 was found to be pregnant. Thereafter it is alleged that the defendants were informed of a blood incompatibility between the pregnant mother and her husband, plaintiff Donald Aquilio. The complaint further alleges that the doctors had been advised of the birth of plaintiffs' first child who had developed thrombocytopenia at birth and alleges that the defendants knew that plaintiffs' second child would develop the same disease but failed to render proper medical care as a result of which the child died. The first cause of action is for wrongful death due to defendants' malpractice. The second cause of action seeks recovery for emotional and psychological pain and suffering and mental and physical injury to plaintiff Daria Aquilio. The third cause of action seeks recovery for identical damages with respect to Donald Aquilio. The fourth cause of action alleges the same damages and is based on breach of contract. The fifth cause of action seeks recovery for the medical and surgical expenses, as well as the afore-mentioned emotional and psychological damages, based on defendants' gross negligence in failing "to take any steps to care for the infant plaintiff even after acquiring the knowledge that, the deceased infant plaintiff would likely develop thrombocytopenia." The sixth, and final cause of action, is based on defendants' fraudulent representations that they were familiar with the medical and hospital records of Daria Aquilio concerning the birth of her first child, and that they were prepared to handle any problems resulting from plaintiffs' blood incompatibility, particularly thrombocytopenia, likely to develop in the second child.

Defendants moved to dismiss the second, third and

fourth causes of action for failure to state a claim upon which relief may be granted (CPLR 3211, subd [a], par 7), and moved for summary judgment dismissing the fifth and sixth causes of action (CPLR 3212). Plaintiffs cross-moved to amend the fourth cause of action to allege a breach by defendants of a specific agreement whereby defendants would contact Daria Aquilio's prior physicians and obtain her prior medical history. Special Term dismissed the second, third and fourth causes of action, granted summary judgment in defendants' favor on the sixth cause of action and also granted summary judgment in defendants' favor on that portion of the fifth cause of action which seeks recovery for emotional, psychological and physical pain and suffering. Plaintiffs' cross motion was denied.

It may be that the rule denying recovery for emotional harm suffered by one person as a result of injuries sustained by another should be eliminated (see, e.g., Torts-Emotional Distress-Failure of Physician to Diagnose Birth Defect—Parents' Right of Recovery—*Howard v Lecher*, 24 NYL School Law Rev 502). So long as the Court of Appeals recently decided case of *Howard v Lecher* (42 NY2d 109) remains viable, however, it is not appropriate for this court to attempt it.

In *Howard*, the Court of Appeals denied recovery for emotional harm suffered by parents whose child was born with Tay-Sachs disease, a progressive genetic disorder affecting the nervous system. The parents had alleged that the defendant doctor failed to inform them of a test to determine the existence of the disease, and that they would have undergone the tests and aborted the pregnancy if they had discovered that the fetus was afflicted with Tay-Sachs. The basis of the court's holding was the so-called "bystander rule" which generally prevents recovery for emotional harm resulting from physical injuries sustained by another. As articulated in *Tobin v Grossman* (24 NY2d 609), this rule reflects a policy decision by the State's highest court to "limit the legal consequences of wrongs to a controllable degree" *(Tobin v Grossman, supra, p 619)*.

This case, just as *Howard* and *Tobin*, involves the twin problems of (1) recoverability for injuries sustained as a

result of pyschological impact, and (2) the scope of duty to one who is not directly the victim of an accident causing physical injury to a third person. It has become well-settled in New York that recovery may be had for emotional harm, absent fear of potential physical injury, to one subjected directly to the negligence of another, so long as the psychic injury was genuine, substantial and proximately caused by the defendant's conduct (*Howard v Lecher*, 42 NY2d 109, 111-112, *supra; Johnson v State of New York*, 37 NY2d 378, 383, 384; *Battalla v State of New York*, 10 NY2d 237). Recovery has been denied for emotional injuries suffered as a result of physical injuries sustained by another (*Howard v Lecher, supra; Tobin v Grossman, supra*). The Court of Appeals reaffirmed *Howard* in the companion cases of *Becker v Schwartz* and *Park v Chessin* (46 NY2d 401), which involved the failure of physicians to advise potential parents of the likelihood of birth defects at a time when pregnancy could have been either prevented or aborted. The court acknowledged that the physicians had breached a duty to the parents, but denied recovery for psychic or emotional harm on the ground that calculation of damages would be too speculative, since a proper calculation would require juries to subtract the love that parents experience in having a child, even though abnormal, from the anguish which they suffer upon the birth of such a child (*Becker v Schwartz, supra*, pp 414-415).

*Howard (supra)* and the instant case both involve a breach of duty to the mother as well as to the infant. This is unlike the typical bystander case which involves a breach of duty only to the victim. The mother in this case, by virtue of her unique physiological relationship with the fetus, was more than a mere bystander. However, it does not logically follow as the dissenter would hold, that defendants, having breached the duty of care to the mother, are liable for all the ensuing damages, including emotional harm and mental suffering. The injuries complained of did not arise directly from the defendants' breach of this duty, as in *Johnson (supra)*. Instead they arose indirectly from the loss of the child.

In order to recover for emotional harm, plaintiff must show, in addition to a breach of duty owed to her, that she

was the person directly injured by that breach. As stated by the Appellate Division, Second Department, in *Howard*, "the fact is that the injury from which their alleged emotional harm stemmed was suffered by the child. The risk of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children" *(Howard v Lecher*, 53 AD2d 420, 423, affd 42 NY2d 109, *supra)*. This view precisely reflects what we believe is the present state of the law in New York. We recognize that this is not a "wrongful life" case and does not involve a speculative measure of damages *(Becker v Schwartz*, 46 NY2d 401, 414-415, *supra)*. At the same time, practically speaking, we are aware that public policy considerations are closely interwoven in defining the perimeters of the concept of "duty" where its definition is an issue in an action for emotional distress (see *Donohue v Copiague Union Free School Dist.*, 47 NY2d 440, 445). We are persuaded that the emotional pain and suffering are too remote to be compensable upon the policy considerations expressed in *Howard* and recovery of damages for such injuries is, therefore, barred by that decision of the Court of Appeals.

The order should be affirmed.

HANCOCK, JR., J. (dissenting). For the following reasons I must respectfully dissent. Plaintiff Daria Aquilio does not seek to recover damages for the psychic and emotional shock she sustained from witnessing injuries to her child resulting from the doctors' breach of duty owed to the child under the theory rejected in *Tobin v Grossman* (24 NY2d 609) and in *Howard v Lecher* (42 NY2d 109). Plaintiff's claim for damages stems solely and directly from the doctor's breach of his duty owed to her (as in *Becker v Schwartz*, 46 NY2d 401), and on this theory she may recover. Defendants do not dispute that the damages sought by plaintiffs in their own right arise out of prenatal care given to Daria Aquilio and not out of postnatal care given to the infant. Plaintiffs allege that defendants, although forewarned of the existing blood incompatibility of plaintiffs and of the previous development of thrombocytopenia in plaintiffs' firstborn child at or shortly after his birth, failed to take

proper precautions in caring for Daria Aquilio during her pregnancy to prevent the development of the condition in plaintiffs' expected child and that as a result, the newborn infant Jason developed thrombocytopenia and died.[1]

In *Howard (supra)*, the parents sought damages for their psychic and emotional trauma arising from the lingering death of their child from Tay-Sachs disease, alleging that but for the negligence of the physician in failing to advise them of the likelihood that the child would have the disease, they would have elected to abort the pregnancy. The court approved dismissal of the claims on the ground that the injuries alleged did not result directly from any breach by the physician of a duty owed to the parents and declined to adopt the position urged by Judge COOKE (now Chief Judge) in his dissent, that the mother should be permitted to recover because her injuries flowed directly from the physician's breach of duty owed to her as a patient.

*Becker v Schwartz* (46 NY2d 401, *supra*) and its companion case, *Park v Chessin*, each involved a claim by a married couple that if they had been properly advised of the probability that their child would be born afflicted, the pregnancy would never have occurred *(Park)* or would have been aborted *(Becker)*. The court sanctioned the claims for the special care of the children and expressly held that the parents "alleged the existence of a duty flowing from defendants to themselves and that the breach of that duty was the proximate cause of the birth of their infants" *(Becker v Schwartz, supra*, p 412) and also of the damages claimed by the parents. The court in allowing recovery for

---

1. The brief submitted on behalf of respondent doctors contains the following brief summary of the facts: "The facts underlying the present action reveal that defendants Nelson and Howard were consulted by the plaintiff, Daria Aquilio, during the course of her pregnancy between March of 1976 and October, 1976. Plaintiffs allege that during the course of said pregnancy the defendants were informed of a blood incompatibility between the plaintiffs, Daria and Donald Aquilio. Plaintiffs further allege that the defendants were informed that plaintiff's first child, Jonathan Aquilio, developed a condition known as thrombocytopenia at or following his birth in July of 1973, presumably as a result of the aforementioned blood incompatibility. The essence of plaintiffs' action is that the defendants, having allegedly been forewarned of the previous development of thrombocytopenia in Jonathan Aquilio, failed to take proper pre-birth precautions with regard to the infant Jason Aquilio, resulting in the death of the infant on October 8, 1976 shortly after birth."

the future care of the infant in *Becker* rejected the argument raised by Judge WACHTLER in his dissent that the majority opinion in *Howard v Lecher (supra)* and the lack of any duty flowing directly from the physicians to the parents (as in *Howard) precluded any recovery.*[2] It disallowed the claims for emotional damages, however, but solely on the ground that factors in mitigation (hereinafter discussed) rendered such damages "too speculative to permit recovery" *(Becker v Schwartz, supra,* p 415). Here, as in *Becker,* the damages alleged by Daria Aquilio resulted directly from a breach of the duty owed to her by the physicians. The sole question, then, is whether the mitigating factors which prompted the court in *Becker* to deny damages for emotional suffering are present here. I find that they are not.

A comparison of the claims of the Aquilios with those of the parents in *Becker v Schwartz (supra), Park v Chessin (supra)* and *Howard v Lecher* (42 NY2d 109, *supra)* reveals an obvious and, I think, controlling difference. In *Becker, Park* and *Howard,* the parents, as a result of the doctors' negligence, had children which they would not have

---

2. Judge COOKE in his dissent in *Howard v Lecher (supra,* p 116), arguing that the precedent in *Johnson v State of New York* (37 NY2d 378) compelled the allowance of damages for emotional and psychic harm, stated:

"There, as here, the injury was inflicted directly upon the individual claiming the harm and the same individual to whom the duty was owed was the one directly injured by its breach. Logic, as well as justice, compelled the conclusion in *Johnson,* as it does here, that all proven harmful consequences proximately caused by the tortious act should be compensable.

"On this, the correct analysis, no legitimate fear of extension to remote family members can be expressed, for only the patient herself is owed the physician's duty and has suffered directly by its breach (cf. *Tobin v Grossman,* 24 NY2d 609, 615, *supra)."*

In his dissent in *Becker v Schwartz (supra,* p 421) Judge WACHTLER commented: "In fact if, as the majority now holds, the doctor did breach a duty directly owed to the parents, there is no longer any reason why they should not be entitled to recover for their emotional suffering as well as the pecuniary loss. Our decision in *Johnson v State of New York* (37 NY2d 378) is directly in point." And further: "After concluding that the plaintiff [in *Johnson v State of New York, supra*] 'was the one to whom a duty was directly owed by the hospital, and the one who was directly injured by the hospital's breach of that duty' we set aside the Appellate Division's determination that recovery should be limited to pecuniary losses." And reasoning from *Johnson,* Judge WACHTLER concluded: "Certainly, in the present case, it could not be said that the parents' claim of emotional suffering is any less genuine than their claim of pecuniary loss."

had at all (because, in *Becker* and *Howard*, the parents would have elected to terminate the pregnancy, and, in *Park*, they would have taken steps to prevent conception). The omissions of the physicians in *Becker*, *Park* and *Howard* resulted in births which would not have taken place and the creation of lives which would not otherwise have existed. Here, the claim is not that some omission or representation by the physicians prompted plaintiffs to initiate the pregnancy or to continue it to full term. The circumstances are just the reverse. The Aquilios desired a second child and had every reason to expect an infant who, like their firstborn son, would thrive. Interruption of the pregnancy was never a consideration. As a result of the defendants' breach of duty to Daria Aquilio, plaintiffs claim that the blood condition which could and should have been controlled was not and that, therefore, their son was born afflicted and died. Herein lies the difference. In *Becker*, *Park* and *Howard* the plaintiffs had children when they would have had none. In the case at bar, the Aquilios, who would have had a robust youngster, through the defendants' malpractice had one who developed thrombocytopenia, a fatal condition.

After holding that the doctors' breach of duty to the parents entitled them to economic damages, the court in *Becker* emphasized the unique factor, common to *Park*, *Becker* and *Howard* upon which its rejection of emotional damages hinged: "Similar to the present cases, the plaintiffs in *Howard* alleged that their physician failed to inform them of the risk involved in their pregnancy and of the availability of tests to determine whether their child would be born afflicted with Tay-Sachs disease. *Had they been so advised, the plaintiffs maintained, they would have undergone the available tests, the results of which, if indicative of the presence of Tay-Sachs disease in their unborn child, would have precipitated a decision on their part to terminate the pregnancy" (Becker v Schwartz, supra,* p 413; emphasis added).

It is in the love that the parents in *Becker* may feel for the child, notwithstanding its abnormality, and which, *but for the doctors' breach, they would not have experienced,* that the court finds the crucial factors in mitigation—factors rendering the damages "too speculative to permit recovery" *(Becker v Schwartz, supra,* p 415) and justifying

its departure from the general rule pertaining to emotional damages announced in *Johnson v State of New York* (37 NY2d 378).

In answering the contention of Judge WACHTLER in his dissent that the majority decision would run counter to *Johnson* (in which the court sustained a cause of action for emotional harm caused by plaintiff's receipt of a notice erroneously informing her of the death of her mother), the *Becker* court stated: "*Johnson* held only that once a duty flowing directly from a defendant to a plaintiff is breached, the plaintiff may recover damages for 'the proven harmful consequences proximately caused by the breach.' (37 NY2d, at p 383, *supra.*) We had little difficulty in concluding that the psychological impact resulting from a daughter's receipt of a notice incorrectly indicating that her mother had expired would be debilitating. That a daughter might receive such notice with mixed emotions lacks any rational basis in human experience. The same cannot be confidently said with respect to the birth of a child, the conception of which was planned and fully desired by the parents. To be sure, parents of a deformed infant will suffer the anguish that only parents can experience upon the birth of a child in an impaired state. However, notwithstanding the birth of a child afflicted with an abnormality, and certainly dependent upon the extent of the affliction, parents may yet experience a love that even an abnormality cannot fully dampen. *To assess damages for emotional harm endured by the parents of such a child would, in all fairness, require consideration of this factor in mitigation of the parents' emotional injuries. (See Restatement, Torts, § 920.) Unlike the case in Johnson where the element of mitigation was not involved, and unlike plaintiffs' causes of action for pecuniary loss in the instant cases, calculation of damages for plaintiffs' emotional injuries remains too speculative to permit recovery notwithstanding the breach of a duty flowing from defendants to themselves*" (*Becker v Schwartz, supra*, pp 414-415; emphasis added).

Here, as in *Becker*, it is claimed that the damages incurred by Daria Aquilio flowed directly from a breach of the duty owed to her by the physicians. On the authority of *Johnson v State of New York (supra)*, assuming that the

existence of the duty and its breach are established, she would be "entitled to recover the proven harmful consequences proximately caused by the breach. In the light of the *Battalla* and *Ferrara* cases *(supra)*, and the reasoning upon which they were based, recovery for emotional harm to one subjected directly to the tortious act may not be disallowed so long as the evidence is sufficient to show causation and substantiality of the harm suffered, together with a 'guarantee of genuineness' to which the court referred in the *Ferrara* case (5 NY2d 16, 21, *supra;* see, also, *Battalla v State of New York*, 10 NY2d 237, 242, *supra)*" *(Johnson v State of New York, supra,* pp 383-384; see p 201, n 2 of this dissent).

The special circumstances which persuaded the majority in deciding *Becker v Schwartz* (46 NY2d 401, *supra)* and its companion case *Park v Chessin* not to follow the general rule (as stated in *Johnson)* because the damages for emotional and psychic harm sought by the plaintiffs in those cases were "too speculative to permit recovery" are not present here. In *Becker* and *Park* the court, while recognizing the existence of the duty rejected in *Howard* (42 NY2d 109, *supra)*, denied recovery for emotional harm not because there was no actionable tort committed upon the plaintiffs but because such damages remained too speculative and because, as in the case of the damages sought in actions "on behalf of their infants for wrongful life, the cognizability of their actions for emotional harm is a question best left for legislative address" *(Becker v Schwartz, supra,* p 415). Here, we are not confronted with the dilemma (presented in *Howard, Becker* and *Park)* of having to balance the emotional distress of parents of afflicted children against the offsetting positive emotional factors resulting from their having created and nurtured lives which, but for the claimed negligence of the doctors, would never have existed at all. On the contrary, it is argued here that had the doctors fulfilled their duties owed to plaintiff, she would, despite the incompatibility between her blood and that of her husband, have a healthy child who survived the blood condition as had her firstborn son. There can be no reason why her damages are any less subject to calculation than those suffered by the plaintiff in *Johnson v State of New York (supra)*. Nor can

it be against public policy to permit recovery for emotional harm to a mother whose healthy fetus, because of neglect in treatment during her pregnancy, died after its delivery from a treatable blood condition.[3]

I note that the result I would reach is consistent with the recent decision of the Appellate Division, First Department, in *Vaccaro v Squibb Corp.* (71 AD2d 270).[4]

Accordingly, the order should be modified by striking therefrom the fourth ordering paragraph and so much of the first ordering paragraph as dismisses the second cause of action and substituting therefor a provision denying defendants' motions with respect to the second and fifth causes of action, and the order as so modified should be affirmed.

DILLON, P. J., CALLAHAN and MOULE, JJ., concur with CARDAMONE, J.; HANCOCK, JR., J., dissents and votes to modify the order in an opinion.

Order affirmed, without costs.

3. If the majority opinion in *Howard v Lecher (supra,* p 113) is viewed as rejecting the claims for emotional harm for "policy reasons" (as well as under the "bystander rule" of *Tobin v Grossman,* 24 NY2d 609) (see interpretation of *Howard* in Judge JASEN's majority opinion in *Becker v Schwartz, supra,* p 413, and in Judge FUCHSBERG's concurring opinion in *Becker v Schwartz, supra,* p 417), such reasons embrace the very same factors which persuaded the majority in *Becker* that the damages for emotional pain were incalculable and that no claim would lie on behalf of an infant for its wrongful birth (see *Becker v Schwartz, supra,* pp 411-415), i.e., the imponderable philosophical and ethical problems of weighing the worth of some life (even life that is stunted and futile) against no life at all. As noted, we are not confronted here with such questions.

4. In *Vaccaro v Squibb Corp.* (71 AD2d 270), decided December 6, 1979, the court sustained claims by the mother for emotional damages suffered as a result of the birth of a child with severe defects allegedly caused by injections of a progestational drug produced by defendant drug manufacturer and administered to her throughout her pregnancy by defendant physician. As in the case at bar, the claim is not that the child would never have been born had the parents been properly advised as in *Howard* and *Becker* but that as a result of the defendants' negligence a child who would otherwise have been healthy was born afflicted.