OPINION OF THE COURT
Nicholas A. Clemente, J.
This action was commenced by service of a summons and complaint by Carol Anne McBride, who is suing individually, as well as on behalf of Baby Girl McBride, Twin B, her stillborn infant.
By prior motions and cross motions, defendants Brookdale Hospital Medical Center, Desrouleaux, Beck and Humayun sought an order dismissing, pursuant to CPLR 3211 (a) (7), the first, second, fifth and sixth causes of action asserted in plaintiffs’ complaint on the grounds that they failed to state a cause of action upon which relief could be granted. Defendants contended that those four causes of action were dismissable because no cause of action exists either on behalf of a stillborn fetus for injuries and death occurring in útero, or on behalf of the mother of the stillborn fetus for mental or emotional distress or from loss of society.
*1000 At the same time, plaintiffs made a motion seeking leave to amend their complaint as the second and sixth causes of action and to add a new cause of action denominated as a seventh cause of action. The amendment proposed for the second cause of action sought to clarify the allegation that the lack of informed consent to the plaintiff mother caused serious damages and injuries to her infant and spoke in terms of a reasonably prudent person rather than of plaintiffs. The amendment proposed for the sixth cause of action eliminated the mother’s claim for the loss of society, companionship and consortium of the deceased infant and explicitly stated that the mother’s claim for mental anguish "includes emotional upset attending a stillbirth”. The seventh cause of action proposed by plaintiffs alleged that defendants failed to inform plaintiff mother of her and the deceased infant’s condition, the dangers of the treatment performed and the alternate treatment available and that the lack of informed consent was a proximate cause of the injury for which recovery is sought. The cause of action would further allege that plaintiff mother would not have undergone the treatment had she been fully informed. The seventh cause of action would then allege that due to the death of the infant, plaintiff mother had been rendered sick and continued to suffer great physical pain and mental anguish, requiring medical care "all to her damage including emotional upset attending a stillbirth”. Plaintiffs, in opposing defendants’ motion, inter alia, pointed to the "tremendous evolution in the concept of tortious conduct within New York Law” as warranting denial of the dismissal motion.
In an order dated June 27,1985, this court stated:
"Plaintiffs’ motion to amend the complaint is denied.
"Defendants’ motions insofar as they seek to strike the first, second, fifth and sixth causes of action are granted. These causes of action appear to fall within the holding in Tebbutt v Virostek [65 NY2d 931] and plaintiffs have failed to present any version of events which would make the instant case distinguishable.”
InTebbutt v Virostek (65 NY2d 931, supra) the plaintiff sued defendant for allegedly causing the death of her fetus, unbeknownst to her, one month earlier when he negligently performed amniocentesis. Plaintiff alleged no physical injury distinct from that suffered by the fetus.
The Court of Appeals in affirming the dismissal of the complaint, stated in pertinent part the following:
*1001 "The case before us is governed by Vaccaro v Squibb Corp. (52 NY2d 809), in which a mother sought recovery for emotional injuries caused by harm done to her child in útero of which she did not learn until the birth, which occurred some time after the harm was inflicted. There, we rejected the contention that the defendants owed any duty to the mother. Similarly, in the case before us, we must reject the mother’s claim for damages for emotional distress.
"Nor do we accept plaintiffs’ contention that recovery is warranted because Marta Tebbutt was placed within the zone of danger by defendant’s actions. While recovery may be had by one suffering distress in consequence of the observation of the serious injury or death of a member of his or her immediate family from within the zone of danger, the observation must be contemporaneous with the conduct causing the injury or death, which plaintiffs at bar have not alleged (see, Bovsun v Sanperi, 61 NY2d 219, 233) * * *
"The dissenters’ reliance on Endresz v Friedberg (24 NY2d 478) and Woods v Lancet (303 NY 349) is misplaced. In Endresz, we held only that no action for wrongful death could be maintained by the personal representative of a stillborn fetus. We also noted that, if the defendants were negligent in causing the automobile accident out of which that action arose, the plaintiff mother could recover for physical and mental injuries she sustained, including emotional upset attending her stillbirths. However, the injuries the plaintiff mother sustained in that case were the direct result of defendants’ breach of a clearly recognized duty to drive with a reasonable degree of care. Citation to Woods v Lancet (supra) similarly begs the duty question, central to resolution of the present appeal. There, we held that an infant child, not his parents, could recover damages for injuries negligently inflicted while he was in útero. Our cases have consistently denied damages for emotional distress to parents of children so injured but born alive (e.g., Vaccaro v Squibb Corp., 52 NY2d 809, supra). ” (Pp 932, 933.)
Plaintiffs now move for an order granting reargument and renewal of the order dated June 27, 1985 and, upon reargument, granting their prior motion requesting permission to amend the complaint to include a cause of action based upon lack of informed consent and to replead the sixth cause of action to include emotional pain and distress attending the stillbirth of the infant.
*1002 Plaintiffs, in support of the motion, seek to distinguish Tebbutt v Virostek (supra). They contend that in Tebbutt there was no concurrence between the act of malpractice, the death of the fetus and the knowledge of the death which caused the emotional harm since the amniocentesis took place several weeks before awareness that the infant had died due to the procedure. In the instant case, plaintiffs contend that the negligence that caused the stillbirth (the mishandling of the labor and delivery) and the knowledge of the “death” resulted immediately in extreme emotional harm. While plaintiffs’ contentions are not entirely clear, it appears that they present two propositions: (1) plaintiff mother while in labor by necessity, witnessed the negligent acts and was in the zone of danger so that she was harmed by the injury to her child; and (2) the mother suffered actual physical injury. Therefore, plaintiffs argue that a cause of action for emotional upset attending a stillbirth is permitted since there is independent physical injury.
Defendants oppose reargument and renewal contending that the emotional pain and suffering of plaintiffs is too remote to be compensable under the policy considerations expressed by the New York courts. As to amending the complaint to interpose a cause of action based upon lack of informed consent, defendants contend plaintiffs have offered no excuse for their delay in making this motion, there has been no identification of the procedure which was performed without plaintiffs’ informed consent and there is no affidavit from plaintiff herself attesting to any lack of informed consent.
The emergent issue, which warrants reexamination here is when, if ever, can a mother recover for emotional injuries resulting from the stillbirth of her fetus.
Discussion of this issue must commence with Woods v Lancet (303 NY 349). In Woods an infant was born maimed because of injuries suffered by him during the ninth month of her mother’s pregnancy caused by defendants’ negligence. Casting aside prior holdings barring recovery in such actions, the Court of Appeals held that “commonsense” justice mandated that such a child — capable of being delivered and remaining alive separate from its mother — was entitled to relief. The court then sent a clear signal regarding derivative actions by stating: “no one seems to claim that the mother, in her own name and for herself, could get damages for the injuries to her infant.” (P 357.)
*1003 Thereafter, while reaffirming that there could be no recovery for mental distress and emotional disturbance resulting from defectively born children (Howard v Lecher, 42 NY2d 109), the Court of Appeals permitted certain circumscribed parental recovery for injuries resulting from defectively born children (Becker v Schwartz, 46 NY2d 401, 420-421 [dissenting opn, Wachtler, J.]).
In Becker (supra) a child was born with Down’s Syndrome. Plaintiffs contended that they were never advised by their doctor (1) of the increased risks of giving birth to such a child because of the relative old age of plaintiff mother at the time of her pregnancy; and (2) the availability of an amniocentesis test to determine if the fetus was afflicted with the syndrome. Plaintiffs sued seeking damages on behalf of the infant and for the emotional and physical injury suffered by the plaintiff mother as a result of the birth of her child. In a companion case to Becker, Park v Chessin (46 NY2d 401), plaintiff Hetty Park had lost a child because of polycystic kidney disease. Advised, allegedly incorrectly, by her doctor that the chance of recurrence upon another pregnancy was practically nil she became pregnant again. The child born from such pregnancy also suffered from the disease. The child survived for two and one-half years before succumbing to the disease. Plaintiff parents claimed that had they been properly advised they would never have again conceived a child. They sought damages on behalf of the infant as well as in their own right for the pecuniary expense they had borne for the care and treatment of their child until her death. Plaintiffs also demanded damages for the emotional and physical injuries suffered by Hetty Park as the result of the birth of her child.
In upholding the parents’ rights to recovery on their own behalf, the Court of Appeals explained:
"The fact that plaintiffs’ wrongful life claims brought on behalf of their infants do not state legally cognizable causes of action inasmuch as they fail to allege ascertainable damages in no way affects the validity of plaintiffs’ claims for pecuniary loss. Plaintiffs state causes of action in their own right predicated upon a breach of a duty flowing from defendants to themselves, as prospective parents, resulting in damage to plaintiffs for which compensation may be readily fixed * * *
"Of course, this is not to say that plaintiffs may recover for psychic or emotional harm alleged to have occurred as a consequence of the birth of their infants in an impaired state. *1004 The recovery of damages for such injuries must of necessity be circumscribed. Controlling on this point is Howard v Lecher (42 NY2d 109, supra) * * *
"While sympathetic to the plight of [the] parents [in Howard v Lecher] this court declined for policy reasons to sanction the recovery of damages for their psychic or emotional harm occasioned by the birth and gradual death of their child. To have permitted recovery in Howard, we observed, would have 'inevitably led to the drawing of artificial and arbitrary boundaries.’ (42 NY2d, at p 113, supra.)” (Becker v Schwartz, 46 NY2d, at pp 413-414.)
Both Howard v Lecher (supra) and Becker v Schwartz (supra) involved claims for recovery by parents where the defendants’ negligence involved a failure to give the parents adequate and accurate information. There was no affirmative mistreatment causing injury to either mother or fetus.
That sort of injury — affirmative mistreatment — arose in Vaccaro v Squibb Corp. (52 NY2d 809, revg 71 AD2d 270). The issue was whether a parent has a cause of action for mental and emotional damage sustained upon the birth of a deformed child, whose deformity was the result of the ingestion of a drug prescribed and administered by the parent’s doctor (71 AD2d 270, 273, supra). The Court of Appeals in holding against such recovery noted that it did not read the complaint as setting forth a cause of action by the mother for independent physical injuries.
The crucial common predicate in Howard, Becker and Vaccaro (supra) is that there be life before a cause of action, however limited, may accrue on anyone’s behalf. Stated harshly, a stillborn fetus has no legally protected status as far as the law of torts is concerned since such law does not recognize it as a human being (Tebbutt v Virostek, 102 AD2d 231, 234, affd 65 NY2d 931, supra). Therefore, no cause of action may accrue on behalf of the fetus, derivatively for the parents or otherwise. While the outlook of the law in terms of tort is certainly not consistent with many widely held moral and religious beliefs, the law’s acceptance of such discrepancies with regard to a fetus has been recognized. As stated in Endresz v Friedberg (24 NY2d 478, 486): "It is argued that it is arbitrary and illogical to draw the line at birth, with the result that the distributees of an injured foetus which survives birth by a few minutes may have a recovery while those of a stillborn foetus may not. However, such difficulties are always present where a line must be drawn.”
*1005 The foregoing conclusions are not dispositive of the issue at bar, however, since the court in Endresz v Friedberg (supra) did recognize that damages for the emotional upset attending the birth of a stillborn child are recoverable under certain circumstances. Hence, the matter to be considered is where does the result of Endresz fit when juxtaposed with repeated subsequent holdings, i.e., Howard, Becker, Vaccaro and Tebbutt (supra) seeming to restrict recovery in similar types of cases.
In Endresz (supra), the plaintiff was seven months pregnant when she was injured in an automobile accident and two days later delivered stillborn twins. The court, inter alia, held that the distributees of the stillborn twins had no cause of action and that the damages recoverable by the parents in their own right afforded ample redress for the wrong done. The court, however, indicated that this right of recovery includes recovery for injuries sustained both physical and mental, including emotional upset attending the stillbirths. In my view, the court was merely enunciating the traditional tort concept of holding a prior tort-feasor responsible for subsequent damages that would not have occurred but for the initial wrong. Thus, in Tebbutt (supra, at p 933) the court in explaining Endresz noted that the mother could recover for emotional upset attending the stillbirths because "the injuries the plaintiff mother sustained in [Endresz v Friedberg] were the direct result of defendants’ breach of a clearly recognized duty to drive with a reasonable degree of care.”
While Endresz (supra) is thereby distinguished from cases such as Tebbutt, Vaccaro, Becker and Howard (supra), a question nevertheless lingers when considered in broad policy terms, why recovery is denied for emotional upset in Tebbutt and Vaccaro, if it is permitted in Endresz.
Of course, Tebbutt (supra) is not the only recent word of the Court of Appeals on the issue of recovery for emotional injury sustained during the course of negligent treatment of a pregnant patient. Recognizing the difficulty of reconciling that which is not readily reconcilable, the court thus stated in Kennedy v McKesson Co. (58 NY2d 500, 506): "The rule to be distilled from those cases is that there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a consequential, result of the breach.”
*1006 In amplification, and within a year, the court then elaborated upon when there could be recovery for emotional injuries. In Bovsun v Sanperi (61 NY2d 219), the court allowed family members injured in an automobile accident to recover for emotional injuries sustained as a result of even more severe injuries sustained by other members of the family. The court adopted, "The zone-of-danger rule, which allows one who is himself or herself threatened with bodily harm in consequence of the defendant’s negligence to recover for emotional distress resulting from viewing the death or serious physical injury of a member of his or her immediate family” (Bovsun v Sanperi, supra, p 228). In following this approach, the court explained: "We are not today creating a new cause of action which has not heretofore existed under the tort law of New York; rather we are recognizing the right of a plaintiff to whom the defendant has owed but breached a duty of reasonable care (as determined under traditional tort principles) to recover as an element of his or her damages, those damages attributable to emotional distress caused by contemporaneous observation of injury or death of a member of the immediate family caused by the same conduct of the defendant” (p 233). It should be observed that the contemporaneous observation requirement is the reason that the court in Tebbutt refused to apply the zone-of-danger rule.
In one sense, Bovsun (supra) adopted an even more lenient standard for when recovery may be had for emotional injury than had Endresz (supra) since under Bovsun you need only be in the zone of danger without actually suffering injury. Nevertheless, in a post-Bousztn case, the Appellate Division in Farago v Shulman (104 AD2d 965, affd 65 NY2d 763), for the reasons stated in the Appellate Division’s memorandum — an affirmance rendered at the same time as the Court of Appeals decision in Tebbutt v Virostek (supra) relying upon Friedman v Mayer (90 AD2d 511, appeal dismissed 59 NY2d 763), continued to speak of a need for physical injury by the mother before she could recover for emotional upset attending a stillbirth. Thus, Farago v Shulman (supra, at p 966) states: " 'It is by now well established that even assuming the death of the fetus in útero was caused by defendants’ wrongful acts, absent independent physical injuries, the plaintiff wife may not recover for emotional and psychic harm as a result of the stillborn birth’ ” (cf. Osborn v Andrus Pavilion of St. John’s Riverside Hosp., 100 AD2d 840). What becomes apparent is that the parameters of the zone-of-danger rule are yet to be *1007 established when we are dealing with a claim by a mother for recovery for emotional distress in the context of in útero injury to her fetus.
The disposition not to apply the zone-of-danger rule in such a context is reflected in Howard v Lecher (supra). In Howard, the parents claimed they would have aborted the fetus had defendant doctor properly advised them that the fetus suffered from Tay-Sachs disease. It was unquestioned that the parents suffered no injury other than the anguish of observing their child suffer, as a result of the defendant’s presumed negligence, nor did that negligence directly cause the child to acquire the disease. The court after pointing that out made the following analogy: "Analogous, indeed stronger since the injuries would directly result from the tortious conduct of the doctor, would be a case in which the doctor, in delivering the infant from the mother’s womb, committed an act of negligence causing frightful injuries to the child, but in no manner physically injuring the parent. Were that parent to suffer psychic injury as a result of the doctor’s misfeasance, it is clear that there would be no recovery (Tobin v Grossman, supra). Nor can the parents recover in the present case” (pp 112-113; emphasis added).
Thus, the rule is clear that negligence to the mother is not compensable when harm is solely to the stillborn fetus and the mother suffers an emotional upset in reaction to such harm.
I, therefore, conclude, based upon Bovsun, Farago and Howard (supra) that as the law now stands in New York, if a mother, while giving birth is independently physically injured by the negligence of her attending physician who also causes the death of her fetus, then she may seek recovery for any resulting emotional upset. Being within the zone of danger, however, does not, standing alone, create liability.
An additional factor militating against application of the zone-of-danger rule here lies in the element of the rule which requires that the injury observed be to an immediate family member. To hold that the zone-of-danger rule applies would be to determine that a fetus is a "member of the immediate family”. As previously indicated, as far as tort law is concerned, a fetus has no "life” until birth. It follows that someone who was never alive could not be considered a member of the family and could not be within the zone of danger (but see, Khan v HIP Hosp., 127 Misc 2d 1063).
*1008 On a motion such as the one before the court, plaintiffs’ allegations must be assumed to be true. In addition, a request to amend the pleadings must be approached with liberality, especially where, as here, there is no prejudice to defendants. However, notwithstanding these principles and despite the plaintiffs’ contentions upon this motion, I do not read the complaint as setting forth a separate cause of action by the mother for independent physical injuries (cf. Zinn v Long Is. Jewish Med. Center, 101 AD2d 860).*
Accordingly, I conclude that reargument should be granted and that upon reargument, the motion is denied except that plaintiff Carol Ann McBride, individually, is granted leave to serve an amended complaint which deletes the causes of action relating to the stillborn fetus and clearly states, if that is her claim, a cause of action for emotional upset attending a stillbirth including a cause of action for lack of informed consent provided there is alleged an independent physical injury to her.

 For example, paragraph 90 of the proposed amended complaint states: "That due to the death of the deceased plaintiff, Baby Girl McBride, Twin B, the plaintiff carol anne mcbride, was rendered sick, disabled and suffered and continues to suffer great physical pain and mental anguish, requires and is requiring medical care and attention all to her damage including emotional upset attending a stillbirth.”