Titone, J.
(dissenting). Because the majority has not adequately considered the consequences of its present holding, I write separately to express my own dissenting views.
It is elementary that, except in limited circumstances not present here, a person cannot recover for emotional shock sustained as a result of injury to another (Kennedy v McKesson Co., 58 NY2d 500; cf., Bovsun v Sanperi, 61 NY2d 219). This rule has traditionally been applied to prohibit a mother’s recovery for the emotional distress she suffered as a result of injury or death to the fetus she carried (Tebbutt v Virostek, 65 NY2d 931; Vaccaro v Squibb Corp., 52 NY2d 809; cf., Martinez v Long Is. Jewish Hillside Med. Center, 70 NY2d 697). Further, the circumstances under which the law permits recovery for purely emotional trauma resulting from a frightening event are extremely limited (see, Kennedy v McKesson Co., supra, at 504-505 [and cases cited therein]; see also, Martinez v Long Is. Jewish Hillside Med. Center, supra; Johnson v Jamaica Hosp., 62 NY2d 523).
*638 While acknowledging these principles, the majority attempts to treat this case as a garden-variety tort action seeking recovery for the physical, as well as emotional, injuries plaintiff sustained as a result of defendants’ alleged malpractice (majority opn, at 635-636). However, the only physical injuries plaintiff was able to allege were the loss of live fetal tissue and blood, coupled with the pain and discomfort, that attends a normal abortion. I do not, of course, intend to minimize or belittle the physical trauma that accompanies many, if not most, abortions. I emphasize this point only to demonstrate that the "physical injury” on which plaintiff’s suit — including its claim for severe emotional and spiritual damages — is based is really nothing more than an ordinary elective abortion similar to that undergone by thousands of women each year.
If this plaintiff is permitted to maintain an action, so too may any other woman who can allege an intentional or negligent act that led to the invariably painful decision to terminate a pregnancy.[1] In effect, the "unusual circumstances” that the court first recognized as a basis for recovery in Martinez v Long Is. Jewish Hillside Med. Center (supra, at 699) have now become the norm. With this decision, the court has effectively embraced a new cause of action for "wrongful infliction of abortion.”[2]
While I am certainly sympathetic with the suffering of plaintiffs such as Mrs. Lynch and I am as disturbed as the majority by the grossly negligent medical conduct that has been alleged here, I cannot agree that the recognition of such a cause of action is sound, at least in light of the present state of the law. If Mrs. Lynch had decided not to terminate her *639 pregnancy and instead carried the child to term, she might have been rewarded with the birth of a healthy child, in which case there would, of course, be no basis for recovery (cf., O’Toole v Greenberg, 64 NY2d 427, 432-434). Even more to the point, if the feared result had actually occurred and the child had been born deformed, Mrs. Lynch would have had no right to seek recovery for the anguish she would unquestionably feel at seeing her child suffer over its lifetime (Vaccaro v Squibb Corp., supra; Becker v Schwartz, 46 NY2d 401; Howard v Lecher, 42 NY2d 109). In such circumstances, recovery would be denied because it would embroil the court in the impossible calculus involved in weighing the "anguish that only parents can experience upon the birth of a[n afflicted] child” against the "love that even an abnormality cannot fully dampen” (Becker v Schwartz, supra, at 414-415). In my view, assessing the monetary value of the suffering that Mrs. Lynch experienced, and discounting it in recognition that she found abortion to be a less harrowing option than carrying the pregnancy to term, is an equally difficult — and indeed an impossible — calculation to make.
On an even more fundamental level, I am disturbed by the message that the court sends when it permits Mrs. Lynch to recover while denying relief to similarly situated women who have chosen to carry their pregnancies to term and have borne a deformed or impaired child. A rule affording such a preference to the decision to abort is unquestionably inconsistent with "the 'very nearly uniform high value’ which the law and mankind have placed upon human life” (O’Toole v Greenberg, supra, at 432, quoting Becker v Schwartz, supra, at 411). The decision to terminate or continue a pregnancy is a matter of private choice with which the courts cannot, and should not, interfere. By rewarding the decision to abort with an opportunity to recover for emotional injury that is specifically withheld from the woman who carries the pregnancy to term, the court has, however unintentionally, embroiled itself in precisely the type of value judgment and line-drawing that it quite properly sought to avoid in Howard v Lecher (supra, at 113) and Becker v Schwartz (supra, at 413-414; see also, O’Toole v Greenberg, supra; Albala v City of New York, 54 NY2d 269).[3]__
*640 Here, as in Howard v Lecher (supra, at 113), "[t]here can be no doubt that the plaintiffs have suffered” and that the alleged slipshod behavior of the defendant doctor would, if proven, constitute serious negligence deserving of severe legal consequences. However, despite the temptation to punish the doctor’s wrongdoing and afford the plaintiffs a remedy for their suffering, "the law cannot provide a remedy for every injury incurred * * *. [I]t is this court’s duty to consider the consequences of recognizing a novel cause of action and to strike a delicate balance between the competing policy considerations” (Albala v City of New York, supra, at 274-275). Because I strongly disagree with the manner in which that balance has been struck here, I dissent and vote to affirm the Appellate Division order dismissing the complaint.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Bellacosa concur with Judge Hancock, Jr.; Judge Titone dissents in part and votes to affirm in a separate opinion.
Order modified, etc.

. Regardless of their specific religious and moral beliefs, there are few women who do not experience some emotional trauma when forced to decide whether to terminate a problematic pregnancy. Indeed, the only legally significant difference between this case and Martinez v Long Is. Jewish Hillside Med. Center (70 NY2d 697) is that this plaintiff’s attorney had the foresight to rely on his client’s abortion itself as a form of physical injury. The same allegations should certainly have been made in Martinez, obviating the need for any dispute as to whether "[ujnder [the] unusual circumstances” Mrs. Martinez’s claim for emotional injuries alone was actionable.

. Although the cause of action the majority recognizes includes a component of physical impact, the gist of the claim is the emotional trauma flowing from the destruction of the fetus. Thus, it is somewhat disingenuous to suggest, as the majority does, that "plaintiff is not seeking to recover for emotional distress resulting from injuries inflicted on the fetus” (majority opn, at 635). Indeed, the majority has simply repackaged old wine in a new bottle.

. I do not intend to suggest that women in Mrs. Lynch’s position would take into account the availability of a damages remedy when making the decision to terminate or continue a pregnancy. I am concerned about the *640 majority’s holding primarily because it creates an appearance of rewarding one decision over the other.