Jasen, J.
(dissenting in part). I am compelled to dissent because I believe the complaint in this action alleges a valid cause of action not only for pecuniary loss resulting from loss of professional reputation, but also alleges a valid cause of action for emotional injury suffered by a person to whom the defendants owed a duty which lies despite any *508 separate liability that defendants would have to another person also injured by their negligence.
This case is before us on the basis of the defendants’ motions to dismiss for failure to state a cause of action. We are thus obligated to give the complaint a liberal construction, assuming the allegations to be true. (Underpinning & Foundation Constructors v Chase Manhattan Bank, N. A., 46 NY2d 459; Cohn v Lionel Corp., 21 NY2d 559.) The threshold question before this court, I believe, is whether or not the necessary elements of a tort have been pleaded — that is, whether facts sufficient to conclude that the defendants owed the plaintiff a duty and they breached that duty, resulting in a foreseeable injury to the plaintiff — are alleged. Assuming that all the necessary elements of a cause of action sounding in tort have been alleged in the complaint, the motion to dismiss must be denied unless the injury plaintiff seeks to recover for is not recognized in this State.
The majority, by allowing the plaintiff to pursue his cause of action for injury to his reputation and the resultant pecuniary loss apparently agrees that the defendants owed the plaintiff a duty which according to the allegations in the complaint was breached. Since the same factual allegations support the cause of action for emotional distress, the plaintiff should also be allowed to continue to pursue that cause of action unless recovery for nonphysical injury is barred by public policy. I can only conclude that the implication of the majority’s holding is that a cause of action alleging an injury of emotional distress is no longer cognizable under New York law, at least in those cases where the defendant is also liable to another person for physical injury caused by the same negligent acts.
My disagreement with the majority’s conclusion is twofold. In the first instance, I find it logically inconsistent to say that the plaintiff can recover for one type of injury flowing from the breach of a duty owed him, but that he cannot recover for a different type of injury flowing from that same breach. The majority, despite this logical inconsistency, concludes that this result is mandated by this State’s policy, as expressed in previous opinions of this court, which limits the scope of duty when three people are *509 involved in a situation causing injury. I do not agree that the precedent of this court or the policy embodied in those decisions does mandate such a result. Indeed, a deference to both policy and stare decisis requires that plaintiff’s cause of action for emotional injury not be dismissed.
To my mind, this case is more properly aligned with Battalla v State of New York (10 NY2d 237) and its progeny than the line of cases coming under the rationale and policy of Tobin v Grossman (24 NY2d 609). The first line of cases recognized liability for emotional injury as a result of the defendant’s breach of its duty to the plaintiff. The second line of cases limits liability so that third parties cannot recover for emotional injuries resulting from observing the physical injury sustained by another person as a result of the defendant’s breach of the duty owed that other person. This case, I believe, is readily distinguishable from the second line of cases so that this plaintiff should be allowed to pursue his remedy under Battalla v State of New York (supra). Furthermore, I see no basis for concluding that a third line of cases has developed which arguably bars one plaintiff from recovering for his emotional injuries merely because the tort-feasor is also liable for physical injuries sustained by a third person even when the defendant has breached its duty to both persons.
Instead, I read these cases to establish two lines of cases with valid theoretical and policy reasons to recover on the basis of a cause of action alleging the injury of emotional distress and to impose a reasonable limitation on that liability when it is caused vicariously through injury to the other person.[1] The point at which liability is to be limited is not simply the point at which a tort-feasor may become liable to more than one person. No one would make such a simplistic argument if only physical injuries were alleged to have been sustained by both parties. The fact that one party alleges emotional injury while the other claims physical injury does not transform a tort-feasor’s liability to two *510 injured persons into liability to only one. The rule is not premised on how many people the defendant might be liable to, but, rather, on the nature of that liability. So, too, liability does not depend on the nature of the injury claimed, but on the nature of the liability. Thus, I must conclude that recovery can be had for emotional injury even if the tort-feasor is concurrently liable for physical injury to a third person, but that the policy of this State as first recognized in Tobin v Grossman (supra) is to limit that liability when the injury is vicariously sustained. Because both lines of cases represent fundamental statements of tort law, an analysis of this case must involve not only an evaluation of the pleadings, but an examination of the distinguishing rationale between those cases which impose liability for emotional distress and those which limit that liability.
Accepting the facts as alleged in the plaintiff’s complaint, the following occurred. Plaintiff, a licensed dentist specializing in oral surgery, owned and used a machine by which he could administer a mixture of nitrous oxide and oxygen to his patients as an anesthetic. When it was time for the machine to be given routine service, plaintiff contacted defendant Norton-Starr, Inc., from which he had originally purchased the machine. Norton’s employee, defendant Hradil, disconnected and removed the machine and replaced it with a rental unit. The machine was then returned to the manufacturer, defendant McKesson Co., for an estimate of the work to be done and the cost. After receiving plaintiff’s authorization, McKesson did the necessary work and returned the machine to Norton. On December 7,1976, Hradil reinstalled the machine in plaintiff’s office.
The complaint alleges that the valves were mislabeled during the course of the repair work and that Norton’s employee failed to perceive or correct the problem when he reinstalled the machine. It also alleges that Hradil informed the plaintiff that the machine was ready for use. As a result of these errors, nitrous oxide would flow when the oxygen valve was turned on and vice versa.
Several days after the machine was reinstalled, plaintiff administered anesthesia to a patient, Tracy Brenan, in *511 order to perform several extractions. At the completion of the extractions, plaintiff administered what he believed to be 100% oxygen to his patient. Instead, due to either the maladjustment or misconnection of the machine, the patient received a fatal dose of nitrous oxide.
Plaintiff alleges that as á result of defendants’ negligence, he participated in an event, this patient’s death, which caused his severe emotional distress. He further states that this emotional distress resulted in ill health and neurosis and finally forced him to give up his professional practice.
The plaintiff also alleges that the defendants’ negligence resulted in widespread publicity and a criminal investigation which damaged his reputation as a skilled dental surgeon and resulted in financial losses. I have no dispute with the majority’s conclusion that this alleges a valid cause of action. Defendants owed plaintiff a duty to see that the equipment he entrusted to them for repair and maintenance was properly adjusted and reinstalled. The alleged breach of that duty resulted in an accident which caused severe injury to plaintiff’s professional reputation. Assuming plaintiff can prove the damages alleged as a result of that injury, there is no dispute that recovery is proper. This dissent, therefore, is limited to whether or not recovery is proper for the emotional distress plaintiff suffered as a result of being made, by virtue of the defendants’ negligence, an active participant in his patient’s death.
I believe the essential analysis must examine the sufficiency of the complaint from two perspectives — first, whether a plaintiff can recover for damages flowing from an entirely emotional injury; and, second, whether plaintiff is alleging injury directly to himself or a vicarious injury, that is one sustained by virtue of observing an injury to another.
Whether or not recovery could be had for damages resulting from emotional, as opposed to physical, injury has long troubled the courts. The concern in allowing recovery for emotional injuries was founded, in part, on the court’s reluctance to accept any injury which was not manifested by some physical injury. The requirement of a physical *512 injury was apparently intended to help insure the validity of the claim. But it is apparent that the requirements of a physical injury were also designed ás a limitation on liability. To further limit liability, recovery was not allowed for physical injuries resulting from emotional trauma on the theory that emotional reactions did not constitute injury so that physical injuries flowing from the emotional injury were not cognizable or foreseeable.
That was the basis of this court’s holding in Mitchell v Rochester Ry. Co. (151 NY 107), in which the plaintiff suffered a miscarriage after being frightened by a negligently driven horse car. The opinion states: “Assuming that fright cannot form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright or the extent of the damages. The right of action must still depend upon the question whether a recovery may be had for fright. If it can, then an action may be maintained, however slight the injury. If not, then there can be no recovery, no matter how grave or serious the consequences. Therefore, the logical result of the respondent’s concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it.” (Mitchell v Rochester Ry. Co., supra, at pp 109-110.) Two lines of reasoning barred recovery in Mitchell: first, that a plaintiff could not recover for emotional injuries even when sustained as a direct result of the defendant’s negligence; second, that any physical injury resulting from emotional injuries was too remote to have been foreseen.
This arbitrary distinction between physical and emotional injuries was subject to much criticism. (See, e.g., Throckmorton, Damages for Fright, 34 Harv L Rev 260; Wilson, The New York Rule as to Nervous Shock, 11 Cornell LQ 512.) In 1931, this court, in Comstock v Wilson (257 NY 231), noted the theoretical flaws in Mitchell (supra), but declined to overrule it. Instead, the court held that where there was a car collision, the jar to the passenger was a sufficient battery to allow recovery for physical *513 injury caused by the nervous shock flowing from the battery. Under the reasoning of Comstock v Wilson (supra), it was necessary to show there was some physical injury, even a slight touching, which led to emotional distress and, thus, justified allowing recovery for resultant physical injuries. No recovery was allowed for the nervous shock itself; it was allowed to link the “battery” to the injury. Essentially, the court in Comstock v Wilson (supra) did away with the rule from the Mitchell case that this type of injury was too remote. Instead, it held that whether the injury for which recovery was sought was the proximate result of the physical impact was a question of fact for the jury. Such an analysis, while responding to a certain degree to the criticism levied against Mitchell (supra), continued to adhere to the court’s reluctance to allow recovery for purely emotional injury. But, significantly, the court in Comstock (supra, at p 235) did recognize that “[mjental suffering or disturbance, even without consequences of physical injury, may in fact constitute actual damage”.[2] Comstock then gave at least partial recognition to the concept that a tort could occur by injuring one’s mental and emotional state, as well as one’s physical state.
That concept was specifically recognized in Ferrara v Galluchio (5 NY2d 16), where the court granted leave to consider the propriety of a jury verdict awarding the plaintiff damages for emotional trauma resulting from her fear that she would develop cancer at the site of the defendant doctor’s negligent administration of X-ray treatments. First, the court noted that the claimed injury was not too remote as to bar recovery. Then, in concluding that plaintiff’s claimed injury to her mental state was proper, the court stated that “the original wrongdoers would be responsible for the resulting damage to its full extent including additional mental anguish caused plaintiff.” (Ferrara v Galluchio, supra, at p 20 [emphasis in original].) The court further stated that “[f]reedom from mental disturbance is now a protected interest in this State” and recovery from mental anguish should be allowed where there is adequate *514 proof that the plaintiff is genuinely injured. (Ferrara v Galluchio, supra, at p 21.)
Arguably, the holding in Ferrara (supra) did not do away with Mitchell’s requirement that the plaintiff sustain a physical injury, since the mental anguish resulted from X-ray burns sustained by the plaintiff while undergoing medical treatments. The requirement of a physical injury to justify recovery for mental anguish or emotional distress was, however, abandoned by this court in Battalla v State of New York (10 NY2d 237, supra).
Stating that the court in Comstock (supra) had abandoned all but the public policy arguments supporting Mitchell’s requirement that a physical injury precipitate the emotional distress, the court considered the underlying rationale of that policy and expressly overruled Mitchell. In Battalla (supra), the court allowed an infant plaintiff to recover for emotional and neurological disorders she allegedly sustained when a State park employee did not properly strap her into a ski-lift chair. There was no physical injury alleged. The court held that the policy concerns in Mitchell should no longer be allowed to bar recovery for emotional injuries.
The opinion in Battalla (supra) noted three policy concerns which had kept the courts from allowing recovery for emotional injury. They were concerned that (1) fraudulent claims would result; (2) that a great deal of extra litigation would develop; and (3) that the damages would be too speculative. As to concerns of fraudulent claims, the court cited the Law Revision Commission’s analysis that causes of action already recognized, such as those requiring only slight impact, could be feigned just as easily and that there was no basis to believe that allowing recovery would necessarily cause more fraudulent claims. Instead, the court concluded that “[t]he ultimate result is that the honest claimant is penalized for his reluctance to fashion the facts within the framework of the exceptions.” (Battalla v State of New York, supra, at p 241.) Thus, the court found that the need to come within one of the exceptions was giving rise to as much litigation as a broad recognition of the right to recover might generate. Furthermore, the court held that it could not abrogate its responsibility merely because *515 of a fear that recognizing a cause of action to recover for emotional injury would increase the court’s workload.
The court found that the only viable policy concern in Mitchell (151 NY 107, supra) was the concern that the damages would be too speculative and difficult to prove. But the court, in a particularly pertinent discussion, stated: “However, the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions, and ‘it is beside the point * * * in determining sufficiency of a pleading’. (Woods v. Lancet, 303 N. Y. 349, 356, supra). In many instances, just as in impact cases, there will be no doubt as to the presence and extent of the damage and the fact that .it was proximately caused by defendant’s negligence. In the difficult cases, we must look to the quality and genuineness of proof [footnote omitted], and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims. Claimant should, therefore, be given an opportunity to prove that her injuries were proximately caused by defendant’s negligence.” (Battalla v State of New York, supra, at p 242.)
While it might be argued that Battalla (supra) recognized emotional injury only in those instances where the emotional injury flowed from the plaintiff’s perception that he could be physically injured, there is no indication that the line of cases recognizing emotional distress as a valid injury is to be so limited. Indeed, the logical inconsistency and theoretical flaws enunciated by the commentators and this court in Comstock (supra) would reoccur were such a limitation imposed. Furthermore, those problems would be exacerbated because rather than searching for some physical impact, however slight, the court would be required to speculate on whether plaintiff’s perception of the risk of physical impact, however slight the impact or tenuous the risk, was reasonable.
On this point, other States, many of whom re-evaluated their requirement of physical impact in part in reliance on Battalla (supra), can provide some guidance. I believe the rule as stated by the Supreme Judicial Court of Maine in Wallace v Coca-Cola Bottling Plants (269 A2d 117 [Me]) summarizes the current rule and the logical conclusion one *516 reaches after reviewing this line of New York cases. The rule stated is that “in those cases where it is established by a fair preponderance of the evidence there is a proximate causal relationship between an act of negligence and reasonably foreseeable mental and emotional suffering by a reasonably foreseeable plaintiff, such proven damages are compensable even though there is no discernable trauma from external causes. The mental and emotional suffering, to be compensable, must be substantial and manifested by objective symptomatology.” (Wallace v Coca-Cola Bottling Plants, supra, at p 121.) (See, e.g., First Nat. Bank v Langley, 314 So 2d 324 [Miss]; Daley v La Croix, 384 Mich 4.)
In Johnson v State of New York (37 NY2d 378), we applied such a standard in allowing recovery for the emotional harm the plaintiff sustained when the hospital breached its duty of care to her in negligently informing her that her mother had passed away. The opinion states the rule as: “One to whom a duty of care is owed, it has been held, may recover for harm sustained solely as a result of an initial, negligently-caused psychological trauma, but with ensuing psychic harm with residual physical manifestations” (Johnson v State of New York, supra, at p 381).
Thus, I would conclude that the plaintiff in this case should not be barred solely because of the nature of the injury he sustained. His complaint alleges that he suffered emotional trauma which caused him to abandon his profession when he was put in a position, because of the defendants’ breach of their duty to him, that he caused his patient’s death. It is clear, at least on the allegations of the complaint, that the defendants owed him a duty to properly complete the service work on his equipment and that they breached this duty. Nothing before us indicates any reason why the defendants would not have realized that a failure on their part to properly perform this work would have put the plaintiff in the position of killing or injuring another person. That emotional trauma would be the natural result of the breach is, I believe, obvious. Thus, under the reasoning of Battalla and Ferrara (supra), plaintiff’s cause of *517 action should not be dismissed merely because it seeks recovery only for emotional injury.
Moreover, I believe the majority, at least tacitly, recognizes the applicability of this line of cases when it allows recovery for the plaintiff’s pecuniary loss resulting from the loss of reputation. As this court stated in Johnson v New York (37 NY2d 378, 383-384, supra): “[N]ot only justice but logic compels the further conclusion that if claimant was entitled to recover her pecuniary losses she was also entitled to recover for the emotional harm caused by the same tortious act. The recovery of the funeral expenses stands only because a duty to claimant was breached. Such a duty existing and such a breach of that duty occurring, she is entitled to recover the proven harmful consequences proximately caused by the breach. In the light of the Battalla and Ferrara cases (supra), and the reasoning upon which they were based, recovery for emotional harm to one subjected directly to the tortious act may not be disallowed so long as the evidence is sufficient to show causation and substantiality of the harm suffered, together with a ‘guarantee of genuineness’ to which the court referred in the Ferrara case (5 NY2d 16, 21, supra); see, also, Battalla v State of New York, 10 NY2d 237, 242, supra).”
As noted initially, a proper analysis of this case not only depends on whether a cause of action seeking to recover for emotional injury is recognized, but also whether or not it is barred by the policy concerns embodied in Tobin v Grossman (24 NY2d 609, supra) and the cases following and expanding its reasoning. That line of cases essentially identifies the point at which various policies mandate that the plaintiff should no longer be held liable. These policies are, of course, formulated to limit tort liability, but they also were derived from the fundamentals of tort concepts. Thus, when the injury for which recovery is sought becomes too remote, unforeseeable, or the damages become too speculative, a plaintiff will no longer be allowed to recover.
Both policy concerns of limiting liability and allowing recovery for emotional distress are recognized in Tobin v Grossman (supra) and the cases which rely on it. In Tobin v *518 Grossman (supra), the court reaffirmed Battalla and Ferrara (supra), stating “that one may have a cause of action for injuries sustained although precipitated by a negligently induced mental trauma without physical impact.” (Tobin v Grossman, supra, at p 613.) The court, however, refused to recognize a cause of action for negligently inflicted emotional distress “sustained by one, solely as a result of injuries inflicted directly upon another”. (Johnson v State of New York, 37 NY2d, at p 383, discussing Tobin v Grossman.) Recognizing that this might constitute an arbitrary limit on liability, the court articulated the policy concern that there would, without some arbitrary standard, be “no rational way to limit the scope of liability.” (Tobin v Grossman, supra, at p 618.) Thus, the line, while perhaps arbitrary and perhaps causing some illogical results, was drawn at the point of the third party observer — that being a person who suffered solely by virtue of the emotional trauma of observing another being injured as a result of the defendant’s breach of the duty owed that other person or of the emotional trauma of learning that another person was injured.
The facts of this case, however, make Tobin (supra) inapplicable. Two distinctions are key: (1) Plaintiff’s injuries were caused by the defendants’ breaching their duty to him, not to another; and (2) he does not claim injury because he observed the patient die, but because he was made the very instrument of his patient’s death due to the defendants’ negligence. Had he alleged that his trauma resulted from observing a patient die, rather than causing her death, I would conclude that Tobin would bar the cause of action, but such is not the case. His injury was caused not by watching another suffer, but by being put in the position of committing a loathsome act upon a patient.
Similarly, this distinguishes our holding in Howard v Lecher (42 NY2d 109), where we held that parents of a child born with the fatal disease Tay-Sachs could not recover “for their mental and emotional pain and suffering resulting from witnessing their child suffer from this horrid disease. It cannot be denied that they themselves were made to bear no physical or mental injury, other than the anguish of observing their child suffer, as a result of the *519 defendant’s presumed negligence, nor did that negligence directly cause the child to fall victim to the disease.” (Howard v Lecher, supra, at p 112.) Thus, Howard v Lecher is distinguishable not only because the parents alleged merely vicarious injury, but also because causation problems existed since the doctor’s negligence did not cause the child to be born with the disease.[3]
The scope of the doctor’s duty in such a case and the recovery parents were entitled to were further defined in Becker v Schwartz (46 NY2d 401). We held that “insofar as plaintiffs allege claims on behalf of their infants, whether denominated as claims for wrongful life or otherwise, they have failed to state legally cognizable causes of action.” (Becker v Schwartz, supra, at p 410.) As alluded in Howard v Lecher (supra), this was in part because the doctor had not caused the defective condition of the child, but merely failed to detect it during the prenatal period. Further, we reasoned that there was not a legally cognizable injury since “[wjhether it is better never to have been born at all than to have been born with even gross deficiencies is a mystery more properly to be left to the philosophers and the theologians.” (Becker v Schwartz, supra, at p 411.)
But in considering the parents’ causes of action for their emotional and financial injury suffered as a result of the doctor’s breach of his duty to them in failing to detect the defective condition of the child in the womb, we allowed only recovery for their increased financial obligations resulting from the birth of the defective child. We agreed that it was the breach of the doctor’s duty to advise the parents of the child’s defective condition which caused that financial loss because, according to their complaint, they *520 would have chosen to terminate the pregnancy had they been properly advised. In allowing recovery only in the amount of their increased financial obligations, we limited the legally cognizable injury for which recovery could be had to the duty owed. This, I believe, is a fundamental concept in tort law. Since it was not alleged that the doctor’s negligence in any way caused the child’s defective condition, his liability to the child was limited. The complaint on behalf of the parents alleged only that the doctor failed to fulfill his duty of advising the parents of available testing which would have revealed the child’s condition prior to birth. We were obligated to conclude, since that case was also before us solely on the basis of the pleadings, that the plaintiffs would have chosen, as their pleadings indicated they would, to terminate the pregnancy had they been properly advised. This would have meant that they would not have incurred a continuing financial obligation. The doctor’s breach of his duty to the parents caused that financial burden and was properly compensable.
But as to the parents’ allegations that they also suffered severe emotional injury as a result of the child being born defective, no liability was allowed. The implication in allowing recovery only for financial loss was that the doctor’s negligence in failing to advise the parents of various options directly caused the financial loss, but did not cause the trauma associated with conceiving and bearing a child suffering from a serious genetic illness. Since the parents alleged that had they been properly informed they would have avoided the suffering associated with bearing and caring for a defective child, they argued that the emotional injury was a consequential injury of the doctor’s negligence. Two lines of reasoning, however, were specifically stated for barring recovery for that cause of action.
The first stated reason for disallowing recovery was to apply the court’s prior holding in Howard v Lecher (supra). This barred any part of the claim based on emotional injury caused the parents vicariously by virtue of watching their child suffer and die.
The second reason for denying recovery to the parents is particularly pertinent to the case now before us. We distin *521 guished Johnson v State of New York (supra) on the ground that it was clear “that the psychological impact resulting from a daughter’s receipt of a notice incorrectly indicating that her mother had expired would be debilitating.” (Becker v Schwartz, supra, at p 414.) The birth of a child, we reasoned, even one suffering abnormalities, will bring love and emotional fulfillment to the parents, as well as anguish and emotional suffering. The mixed nature of the emotions would require mitigating the emotional injuries sustained by weighing the benefits derived. (Restatement, Torts, § 920.) This additional factor, we concluded, made the ascertainment of damages too speculative for the courts.
The case at hand, however, presents no such question of mitigation. The emotional impact of unintentionally causing someone’s death could in no way be termed anything less than debilitating. No joy or positive emotions can be conceived to have arisen from the situation defendants’ negligence placed the plaintiff in.
Nor can it be said that problems of causation exist. Unlike Howard and Becker (supra), it is clear that defendants’ negligence caused the plaintiff to unintentionally and unknowingly kill someone and this, in turn, understandably caused his severe nervous shock.
In sum, on the basis of the pleadings and the record before us, I would hold that the plaintiff’s allegations that his emotional trauma resulted in ill health and psychological barriers which eventually forced him to give up his dental practice are sufficient to defeat a motion to dismiss. Accordingly, I would reverse the order of the Appellate Division and reinstate the complaint.

. The majority’s statement that a person to whom a duty is owed may recover only for injuries which are direct, rather than a “consequential, result of the breach”, appears to adopt a similar analysis. Since all injuries are consequences of the breach, I assume the distinction the majority is making is between direct and indirect or vicarious injuries.

. In this context, I believe damage is synonymous with injury as no question of damages arises without a cognizable injury.

. Whether or not the mother, or more properly under commonly accepted principles of genetic science, both parents caused their child’s death by their decision, made as a result of negligent medical advice, to conceive the child was not a consideration in Howard v Lecher (supra) since the only allegation was that the parents suffered watching their child suffer. I believe it is inappropriate to draw any conclusion as to what would have been the result in that case had the parents alleged that they suffered by causing their child’s death when they decided to conceive the child. Such an analysis not only overreads the allegations made in that case, but also treads on theoretical and philosophical grounds when construing a parent or parents who conceive a child with a genetic defect or disease to be the cause of that defect or disease.